IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JONES EAGLE, LLC** *f/k/a*
**JONES DIGITAL, LLC**                                                                                       **PLAINTIFF**

**v.**                          **CASE NO. 4:24-cv-00990-KGB**

**WES WARD, in his official capacity as the**
**Secretary of the Arkansas Department of**
**Agriculture; TIM GRIFFIN, in his official**
**capacity as the Attorney General of Arkansas;**
**and STATE OF ARKANSAS**                                                                              **DEFENDANTS**

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff's suit is its latest attempt to evade responding to a subpoena lawfully issued to it by Attorney General Griffin. Instead of simply responding to the subpoena to show its operations comply with Arkansas law, it cries foul where none has occurred. Plaintiff alleges that Act 636 does not apply to it because its real property in interest is not "agricultural land" as defined in the statute, and that Defendants have no reasonable likelihood of success in any proceedings that could be initiated under Act 636. *See* Compl. ¶¶ 37-42, 111. Plaintiff does not explicitly state Act 174 does not apply, but only lumps the act in with Act 636 on an assumption the Defendants could "potentially" threaten to enforce it. *Id*. at ¶ 42. This alone shows that Plaintiff has suffered no injury in fact to prove standing under its constitutional challenges to Act 636 of 2023 and Act 174 of 2024. Along those lines, there has been no determination by either Defendant, or anyone else for that matter, that Plaintiff could be subject to enforcement under the Acts. So the matter is not ripe for judicial review.

Even if the Court finds for Plaintiff on standing and ripeness, the Court should decline jurisdiction under the *Younger* abstention doctrine. Prior to Plaintiff's suit, Attorney General

Griffen commenced state-court proceedings against Plaintiff. Those proceedings are parallel and relate to the Attorney General's investigation and enforcement of a subpoena against Jones Digital in connection with Act 636 of 2023 and Act 174 of 2024, and Jones Eagle, LLC *f/k/a* Jones Digital, LLC will have an opportunity to raise its federal claims in that proceeding.

For these reasons, the Court should dismiss Plaintiff's Complaint.

## BACKGROUND

Under Ark. Code Ann. § 25-16-705(a), "[i]n all litigation, including criminal matters, in which the interests of the State of Arkansas are involved or may become involved before any tribunal, board, or commission, the Attorney General shall have the right to subpoena any person or the books, records, or other documents being held by any person." Acts 636 and 174 create interests of the State upon which the Attorney General has the authority to issue such subpoenas.

Act 636 prohibits foreign-party-controlled businesses from owning Arkansas agricultural land. *See* Ark. Code Ann. § 18-11-801, *et seq*.[1] "Agricultural land" means any Arkansas land that is (1) outside the corporate limits of a municipality and (2) is used for forestry production, ranching, or timber production, or has been used for at least one of the foregoing within the last five years. Ark. Code Ann. § 18-11-802(1)(A). Two exceptions exist. The first is land that is less than ten acres in the aggregate *and* has annual gross receipts of less than $1,001 from the sale of the farm, ranch, or timber products produced on the land. Ark. Code Ann. § 18-11-802(1)(A)(ii). The second exception is land producing oil, gas, coal, lignite, brine, and all minerals "known and recognized as commercial minerals underlying the land." Ark. Code Ann. § 18-11-802(1)(B). A "prohibited foreign party" is specifically defined in the Act as to individuals, businesses, and

---

[1] Act 636 provides the statutory codification as Ark. Code Ann. § 18-11-701, *et seq*. Westlaw, however, has the statute codified at Ark. Code Ann. § 18-11-801, *et seq*. This was a correction during the code-revision process.

governments having a "significant interest" or "substantial control" in agricultural land. *See* Ark. Code Ann. § 18-11-802(5), (8).

In December of 2023, three companies were identified by the Arkansas Department of Agriculture as potentially in violation of Act 636—Risever Machinery LLC, Jones Digital LLC (now Jones Eagle, LLC), and 4811 S. Zero Street, LLC. Without even requiring subpoenas, Risever Machinery LLC and 4811 S. Zero Street, LLC produced the requisite documents to show there is no violation of Act 636. Act 174 is irrelevant except violations of Act 636 may constitute violations under it as well.

Jones Eagle has refused to provide documentation showing that it is not a prohibited foreign party and that its land does not meet the definition of agricultural land. After multiple agreements for extensions for production on assurances to comply, Jones Eagle has failed to respond to the subpoena.

As a result, on November 8, 2024, the Attorney General filed a Petition for Citation of Contempt and Order to Appear and Show Cause ("State Court Petition") against Jones Digital, LLC in the Circuit Court of Baxter County, Arkansas. *See* Pet. for Citation of Contempt and Order to Appear and Show Cause, Ex. 1. The State Court Petition seeks to hold Jones Digital in criminal contempt for failing to comply with the Attorney General's subpoena. *Id*.

On November 13, 2024, Jones Eagle, LLC f/k/a Jones Digital, LLC filed a Complaint ("Federal Complaint") against the Attorney General, among others, in federal court. *See* Compl., ECF No. 1. In the federal-court lawsuit, Jones Digital seeks an injunction and declaratory relief to enjoin the Attorney General from enforcing Act 636 of 2023 and Act 174 of 2024, which Jones Digital claims are unconstitutional. *Id*. ¶¶ 1–8.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of claims that "fail[] to state a claim upon which relief can be granted" by motion. Under that rule, a complaint's factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999) (citing *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999)). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Id.* (quoting *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998)). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And, as here, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 12(b)(6) dismissals are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In other words, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to "show[] that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a)(2) and must be dismissed. *Id.* at 679.

Applying that standard, this Court should dismiss Plaintiff's Complaint.

ARGUMENT

1. **Plaintiff lacks Article III standing.**

   ***Standing under Article III of the U.S. Constitution is a threshold jurisdictional issue.***

   "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *McNaught v. Nolen*, 76 F.4th 764, 768 (2023) (quoting *Sch. of the Ozarks, Inc. v. Biden,* 41 F.4th 992, 997 (8th Cir. 2022) (citation omitted)). The doctrine of standing is "rooted in the traditional understanding of a case or controversy." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Standing is determined "at the time the action commences." *Id.* at 769 (citations omitted). The complaint "must allege sufficient facts to support a reasonable inference that [the plaintiff] can satisfy the elements of standing." *Id.* at 770 (quoting *Sch. of the Ozarks,* 41 F.4th at 997) (internal quotation marks omitted).

   "[T]he courts must independently satisfy themselves that the Article III requirement that a case or controversy be presented is satisfied." *McNaught*, 76 F.4th at 769 (citing *City of St. Louis v. Dep't of Transp.*, 936 F.2d 1528, 1532 (8th Cir. 1991)). Plaintiffs always bear the burden to establish standing as an "indispensable part of [their] case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And plaintiffs cannot meet that burden "[w]ithout factual allegations plausibly alleging that [they] actually suffered some kind of injury." *Holmbeck v. Solomon*, 639 F. Supp.3d 829, 845 (E.D. Ark. 2022). And "plaintiffs must demonstrate standing for each claim he seeks to press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted).

   To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *McNaught*, 76 F.4th at 768-69 (quoting *Spokeo, Inc.*, 578 U.S. at 338); *see also TransUnion LLC*, 594 U.S. at 421; *Defs. of Wildlife*, 504 U.S. at 561. Stated another way, "[if] 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). Article III does not permit federal courts to "adjudicate hypothetical or abstract disputes." *Id.* Stated frankly, "[f]ederal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions." *Id.* at 423-24.

**Plaintiff fails to show an injury in fact.** The first inquiry into standing is whether the plaintiff has "plausibly alleged an injury in fact." *McNaught*, 76 F.4th at 769. "An injury in fact is 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Spokeo, Inc.*, 578 U.S. at 339). To be "concrete" means the injury is "real, and not abstract." *TransUnion LLC*, 594 U.S. at 424 (citations omitted). Regarding the concrete-harm requirement, "[the courts] 'assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *McNaught*, 76 F.4th at 769 (quoting *TransUnion LLC*, 594 U.S. at 424 (citation omitted)).

As Plaintiff admits throughout its Complaint, there has been no enforcement action taken against Plaintiff. *Id.* So Plaintiff seeks to stop a future injury, not a present one. *See* Compl. ¶¶ 1, 15, 44. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S.

6

149, 158 (2014) (cleaned up). For a future injury to be sufficiently imminent, a plaintiff must demonstrate "'a credible threat' of enforcement." *Id*. at 161 (citation omitted). This means that the Plaintiffs must "allege[] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id*. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). As expressed by the Supreme Court in *Clapper v. Amnesty Intern. USA*, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." 568 U.S. 398, 409 (2013) (quoted citation omitted). "Thus, [the Supreme Court] ha[s] repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Id*. (quoted citation omitted).

In *Clapper*, the plaintiffs challenged the constitutionality of the Foreign Intelligence Surveillance Act of 1978, on the day the law went into effect. *Id*. at 401. Their challenge was directed at the section that "allows the Attorney General and Director of National Intelligence to acquire foreign intelligence information by jointly authorizing the surveillance of individuals who are not 'United States persons' and are reasonably believed to be located outside the United States." *Id*. The law requires the approval of the Foreign Intelligence Surveillance Court's before surveillance can be initiated. *Id*. The plaintiffs in the case were persons whose work, they alleged, required them to have interactions with persons they believed were targets of the Act. *Id*. They sought a declaratory judgment that the act is unconstitutional and an injunction against the surveillance under the act. The plaintiffs argued they have an injury in fact because (1) "there [was] an objectively reasonable likelihood" there communications would be surveilled in the future, and

7

(2) they were suffering a present injury because the risk of surveillance had forced them to take costly and burdensome measures to protect the information and had ceased engaging in certain communications by phone and e-mail, which was traceable to the act. *Id*. at 406-07.

The Court held the plaintiffs lacked Article III standing on their first theory because their threatened injury was speculative, based on assumption and not imminent. *Id*. at 410-13. In so holding, the Court reasoned that the plaintiffs position "rest[ed] on their highly speculative fear" that their communications would be targeted, the government would invoke its authority under the act, that the Article III judges on the Foreign Intelligence Surveillance Court would grant the proposed surveillance procedures, the government will succeed in intercepting communications with the plaintiffs' contacts, and the plaintiffs conversations with those individuals would be intercepted. *Id*. at 410. This argument, the Court found, "relie[d] on highly attenuated chain of possibilities" and "[did] not satisfy the requirement that threatened injury must be certainly impending." *Id*. (citations omitted). The Court also found that plaintiffs' theory that they had a present injury due to "incurred certain costs and burdens as a reasonable reaction to a risk of harm [was] unavailing" "because the harm [plaintiffs] [sought] to avoid [was] not certainly impending." *Id*. at 416. "[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. (internal citations omitted). "[S]uch a fear is insufficient to create standing." *Id*. (citing *Laird v. Tatum*, 408 U.S. 1, 10–11 (1972) wherein the Court noted that a "chilling effect arising merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some *other* and additional action detrimental to that individual." (emphasis in original)).

Like in *Clapper*, the Plaintiff's alleged injuries are based on a chain of possibilities that cannot create an injury in fact. For one, there has been no enforcement action taken against Plaintiff. Second, Plaintiff represents to the Court that Acts 636 and 174 do not even apply to it, and therefore, there could be no successful enforcement action against it under the Acts. *See* Compl. ¶ 37-38. At this juncture, there has been no determination as to whether Plaintiff is a "prohibited foreign party" as defined in the statues, and therefore, there has been no action taken by any government actor, including the Secretary Ward and Attorney General Griffin, to commence an action against Plaintiff for violating either act.

And third, Plaintiff is continuing to operate in Arkansas as it has since 2023. This is not a case where the plaintiff argues an intention to engage in conduct that would be prohibited under the Acts. Instead, Plaintiff has stated no facts to show that its business operations today are any different than how it has operated in the past, or that his business will operate any differently in the future.

Simply put, Plaintiff has failed in every respect to satisfy an injury in fact, whether present or threatened. Therefore, Plaintiff lacks standing to bring this suit.

2. **This case is unripe for judicial review because there is no guarantee that the Acts will ever affect the Plaintiff, and if it does, there is no way to know if the effect will be unconstitutional.**

"The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). The difference is that "[r]ipeness is peculiarly a question of timing and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013) (citing *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)). It is the Plaintiff's

burden to show its case is ripe for review by showing "both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022) (quoting *Sch. of the Ozarks*, 41 F.4th at 998). A case is unfit for review if it "would . . . benefit from further factual development [or] poses a purely legal question . . . contingent on future possibilities." *Id*. (quoting *Sch. of the Ozarks*, 41 F.4th at 998). In this case, the standing and ripeness issues "essentially 'boil down to the same question,'" so the analysis collapses together. *Id.* (quoting *Sch. of the Ozarks*, 41 F.4th at 998).

The Plaintiff denies that the challenged Acts apply to it and admits that there has been no enforcement taken against it. This suit is hyper-speculative, so there is no guarantee that it will ever be injured or otherwise suffer harm under the laws. As mentioned above, additional factual development over time through the underlying state court proceeding on the subpoena would be beneficial for the challenge Plaintiff asserts because it may never be harmed in the first place. Ruling now would be addressing a legal question based on mere possibilities. The Plaintiff's claim is unripe.

3. **Alternatively, the Court should abstain from exercising jurisdiction in light of the ongoing, first-filed state court proceeding.**

In *Younger v. Harris*, the Supreme Court held that a federal court should abstain from exercising jurisdiction in cases where there is a parallel, pending state criminal proceeding, so long as certain conditions are met. 401 U.S. 37, 43–46 (1971). The *Younger* abstention doctrine is based on the theory that "[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Id*. at 45 (citation and quotation omitted).

Since *Younger*, the Supreme Court has issued a series of decisions that have expanded the *Younger* abstention doctrine. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013); *New*

10

*Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350 (1989); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

Three lines of inquiry for determining whether *Younger* abstention is appropriate emerge from these decisions. *See Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 551–52 (8th Cir. 2018). First, the court must determine whether the underlying state proceeding falls within one of the three "exceptional circumstances" where *Younger* abstention is appropriate. *Id*. (citing *Sprint*, 571 U.S. at 78). To satisfy this factor, the state proceeding must qualify as (1) a criminal prosecution, (2) a civil enforcement proceeding that is akin to a criminal prosecution, or (3) a proceeding implicating a state's interest in enforcing the orders and judgments of its courts. *Id.* at 552 (citing *Sprint*, 571 U.S. at 72–73).

If the underlying proceeding fits within a *Younger* category, the court must evaluate whether the state proceeding satisfies the *Middlesex* factors. *Id*. (citing *Sprint*, 571 U.S. at 81). The questions to be considered are whether the state proceeding (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges. *Id.* at 553.

Even if the underlying state proceeding satisfies the first two inquiries, there is a third level of inquiry—whether abstention is nevertheless inappropriate because an exception to abstention applies. *Id*. (citing *NOPSI*, 491 U.S. at 367).

A. **"Exceptional circumstances" exist.**

The State Court Petition implicates a civil enforcement proceeding that is akin to a criminal prosecution, therefore, the abstention applies. *Sprint* identified three characteristics for recognizing a civil proceeding that resembles a criminal prosecution: (1) the action was initiated by the State in its sovereign capacity; (2) the action involves sanctions against the federal plaintiff for some wrongful act; and (3) the action includes an investigation, often culminating in formal charges.

11

*Minn. Living Assistance, Inc.*, 899 F.3d at 552 (citing *Sprint*, 571 U.S. at 79–80). In this case, the underlying proceeding meets all three criteria and thus falls within an applicable *Younger* category.

The state-court lawsuit satisfies both the state-involvement and the investigation criteria because the lawsuit was initiated by the State, via the Attorney General (in his sovereign capacity), pursuant to an investigation into Jones Digital's ownership structure, potential violations of Act 636 of 2023 and Act 174 of 2024, and failure to comply with the Attorney General's subpoena. The state-court lawsuit also involves sanctions for wrongful conduct. To that end, the Attorney General seeks to impose criminal contempt sanctions against Jones Digital pursuant to Ark. Code Ann. §§ 25-16-705 and 16-10-108(a)(3). Because all three essential characteristics identified by *Sprint* are present here, the underlying state-court lawsuit qualifies as a civil proceeding akin to a criminal prosecution.

### B. The *Middlesex* factors are satisfied.

The three *Middlesex* factors are "additional factors appropriately considered by [a] federal court before invoking *Younger*." *Sprint*, 571 U.S. at 81. Under *Middlesex*, a federal court will consider whether the state proceeding (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges. *Minn. Living Assistance, Inc.*, 899 F.3d at 553.

The state-court lawsuit satisfies the judicial-in-nature and adequate-opportunity-to-raise-constitutional-challenges factors because the State Court Petition was filed in an Arkansas circuit court, where Jones Digital will have an adequate opportunity to raise constitutional challenges before a judge. The burden rests on Jones Eagle to show that the state-court proceedings "do not afford [it] an adequate opportunity to raise [its] constitutional claims." *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010). And where, as here, "a litigant has made no effort in state court to present

his claims, a federal court should assume that state procedures will afford an adequate remedy." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 2 (1987).

The state-court lawsuit also implicates important state interests. Namely, the State has an important interest in ensuring compliance with the Attorney General's subpoenas and with enforcing land-use regulations. Indeed, the Eighth Circuit has held in the *Younger* context that "the enforcement and application of zoning ordinances and land use regulations is an important state and local interest." *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 480 (8th Cir. 1998). Moreover, what matters for purposes of *Younger* abstention is *only* whether the state-court lawsuit implicates important state interests. Federal courts "do not weigh the competing interests of the federal and state courts in adjudicating" the plaintiff's claims. *Plouffe*, 606 F.3d at 893. Thus, whatever arguments Jones Eagle may put forth in favor of adjudicating its claims in federal court are irrelevant to this prong of the *Younger* analysis.

    **C.**    **No exception to *Younger* applies.**

The final consideration is whether an exception to *Younger* applies. Even where the proceeding falls into a *Younger* category and satisfies the *Middlesex* factors, a federal court is not obligated to abstain where the state proceedings were initiated in bad faith or to harass the litigants, *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1254 (8th Cir. 2012), or where the relevant state law is "flagrantly and patently" unconstitutional "in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," *Plouffe*, 606 F.3d at 894. The "patently unconstitutional" exception is "extremely narrow." *Id*. The Supreme Court in *NOPSI* also left open the possibility that a "facially conclusive" claim of federal preemption may be sufficient to render abstention inappropriate. *See* 491 U.S. at 367.

None of the *Younger* exceptions apply. The Attorney General's lawsuit against Jones Digital was not initiated in bad faith or to harass Jones Digital. It was filed pursuant to Jones

13

Digital's refusal to comply with the Attorney General's subpoena. And the statute that permits the Attorney General to initiate contempt proceedings is not patently unconstitutional. Likewise, Act 636 of 2023 and Act 174 of 2024 are not patently unconstitutional, either.

Finally, preemption is facially conclusive if binding precedent already decided the issue or if it is otherwise "readily apparent." *Minn. Living Assistance, Inc.*, 899 F.3d at 555. In other words, preemption is not facially conclusive if it requires a "detailed analysis." *Id*. Jones Eagle cannot point to any binding precedent to show that any of the challenged statutes are preempted or that preemption is readily apparent.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.


November 21, 2024                    Respectfully submitted,

                                          TIM GRIFFIN
                                        Attorney General

By:   Ryan Hale
      Ark. Bar No. 2024310
      Senior Assistant Attorney General

      Jordan Broyles
      Ark. Bar No. 2015156
      Senior Assistant Attorney General

      Office of the Arkansas Attorney General
      323 Center Street, Suite 200
      Little Rock, AR 72201
      (501) 295-7419
      (501) 682-2591 fax
      ryan.hale@arkansasag.gov

      *Attorneys for Defendants*