IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JONES EAGLE LLC**                                                                                 **PLAINTIFF**

**v.**                                       **Case No. 4:24-cv-00990-KGB**

**WES WARD, in his official capacity**
**as Secretary of the Arkansas Department of Agriculture,** *et al.*      **DEFENDANTS**

### ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

Before the Court is plaintiff Jones Eagle, LLC's ("Jones Eagle") motion for temporary restraining order and preliminary injunction (Dkt. No. 7). Jones Eagle requests that the Court enter a temporary restraining order and preliminary injunction enjoining defendants Wes Ward ("Secretary Ward"), in his official capacity as Secretary of the Arkansas Department of Agriculture, Tim Griffin ("Attorney General"), in his official capacity as Attorney General of Arkansas, and the State of Arkansas (collectively "Defendants") from enforcing Arkansas Act 636 of 2023 ("Act 636"), Arkansas Code Annotated §§ 18-11-110 and 18-11-801, *et seq.*, and Arkansas Act 174 of 2024 ("Act 174"), Arkansas Code Annotated § 14-1-606. On November 21, 2024, the Court held a hearing on Jones Eagle's request for a temporary restraining order at which counsel for both parties were present.[1] For the following reasons, the Court grants Jones Eagle's request for a temporary restraining order and enjoins Defendants, and all those acting in concert with them,

---

[1] The Court concludes that, although it held an adversarial rather than an *ex parte* hearing on the motion, it was not the sort of adversarial hearing that included an opportunity to present sufficient evidence, testimony, and argument so as to allow the basis of the relief requested to be strongly challenged. Therefore, the Court only considers the motion for temporary restraining order at this time. *See, e.g.*, *Piraino v. JL Hein Serv. Inc.*, No. 4:14-CV-00267-KGB (E.D. Ark. May 16, 2014) (citing *McLeodUSA Telecomms. Servs. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 n.1 (N.D. Iowa 2005)).

from enforcing either Act 636 or Act 174 against Jones Eagle or Qimin "Jimmy" Chen within the time permitted by Federal Rule of Civil Procedure 65(b)(2).

## I.     Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing doctrine includes both prudential and constitutional considerations, but "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. A party invoking federal jurisdiction must "demonstrate standing . . . for each form of relief that they seek," *Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 595 (8th Cir. 2024) (alteration in original) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)), and each claim brought. *TransUnion*, 594 U.S. at 431. As such, the burden lies with the plaintiff to establish every element of the Article III standing inquiry. *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021)). Where, as here, an injunction is sought:

> a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 794 (8th Cir. 2016) (alteration in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). This mirrors the requirements for Article III standing more generally. *See, e.g.*, *Becker*, 112 F.4th at 595. The Supreme Court has emphasized that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th

Cir. 2024) (quoting *TransUnion*, 594 U.S. at 435). "If the risk is too speculative, Article III standing is lacking." *Id.* at 711.

Given the stage of this proceeding and that Defendants have yet to submit any written response to the motion for temporary restraining order and preliminary injunction, on the limited record before it, this Court is satisfied that Jones Eagle has standing to challenge Act 636 and Act 174 through a motion for temporary restraining order.

## II. Abstention

A federal district court with jurisdiction "has a virtually unflagging obligation to hear and resolve questions properly before it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, in *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court recognized a limited exception—grounded in the principles of comity and federalism—to this general obligation for cases in which there is a "parallel, pending state criminal proceeding." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 69–70 (2013). Specifically, *Younger* held that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." 401 U.S. at 55. The court later expanded the application of *Younger* beyond criminal proceedings to two categories of state civil proceedings: (1) civil enforcement proceedings; and (2) civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," such as civil contempt orders and requirements for posting of bond pending appeal. *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). *Younger* abstention does not apply outside these categories of cases. *Sprint*, 571 U.S. at 70.

In determining whether *Younger* applies, the Supreme Court has identified three factors that district courts should consider: (1) whether there is an "ongoing state judicial proceeding"; (2) whether the proceedings "implicate important state interests"; and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These are "additional" factors that are to be considered only if the case fits into one of the categories identified in *NOPSI*. *Sprint*, 571 U.S. at 81. The Eighth Circuit has distilled the entire *Younger* analysis into a three-part inquiry:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where *Younger* abstention is appropriate? Second, if the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy what are known as the "*Middlesex*" factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

*Wassef v. Tibben*, 68 F.4th 1083, 1087 (8th Cir. 2023) (quoting *375 Slane Chapel Rd., LLC v. Stone Cnty., Mo.*, 53 F.4th 1122, 1127 (8th Cir. 2022)).

There are at least four potential "exceptions" to *Younger*. The first is where there is a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief" in the state court proceeding. *Younger*, 401 U.S. at 55. Second, there is an exception for those rare circumstances in which the federal plaintiff does not have the opportunity to press her federal claim in the state court proceeding. *See Moore v. Sims*, 442 U.S. 415, 432 (1979) (discussing the holding of *Gerstein v. Pugh*, 420 U.S. 103 (1975)). Third, there is an "extremely narrow" exception for statutes that are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 613–14 (8th Cir. 2018) (first quoting *Younger*, 401 U.S. at 53–54; then quoting *Plouffe v. Ligon*,

4

606 F.3d 890, 894 (8th Cir. 2010)); *see also Wassef*, 68 F.4th at 1087 (noting a *Younger* exception where a criminal statute is "flagrantly and patently" unconstitutional on its face).  Finally, a number of courts have recognized a fourth exception for "facially conclusive" federal preemption claims. *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 554–55 (8th Cir. 2018).  Although the Eighth Circuit has declined to decide whether such an exception is a "required part of the abstention analysis," *see id.* at 554 n.5, at least three circuits apply this exception as part of their abstention analysis.  *See Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 27-28 (1st Cir. 2009); *Woodfeathers, Inc. v. Washington Cnty., Or.*, 180 F.3d 1017, 1021–22 (9th Cir. 1999); *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 478 (6th Cir. 1997).

Defendants argue that the Attorney General's petition for citation of contempt and order to appear and show cause, filed in in Baxter County, Arkansas, Circuit Court on November 8, 2024, falls within the category of "civil enforcement proceedings" to which *Younger* applies under *NOPSI* (Dkt. Nos. 17, at 11–12; 17-1, at 1–3).  There is no binding precedent in the Eighth Circuit as to whether a petition to enforce a subpoena qualifies as a civil enforcement proceeding "akin to a criminal prosecution" for purposes of *Younger* abstention.  However, other circuits that have examined the issue have concluded that mere investigations and investigative proceedings, including subpoenas issued before the grand jury or prosecutorial information stage, do not qualify for *Younger* abstention.  *See Google, Inc. v. Hood*, 822 F.3d 212, 223–24 & n.7 (5th Cir. 2016); *Guillemard–Ginorio v. Contreras–Gomez*, 585 F.3d 508, 519 (1st Cir.2009); *Telco Comm'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1227 (4th Cir.1989).

Given the stage of this proceeding and that Defendants have yet to submit any written response to the motion for temporary restraining order and preliminary injunction, on the limited record before it, this Court is satisfied that Jones Eagle has standing to challenge Act 636 and Act

5

174 through a motion for temporary restraining order. *See Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 27 F.4th 886, 891–96 (3d Cir. 2022) (finding state court petition to enforce subpoena does not qualify for *Younger* abstention); *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 235–37 (3d Cir.), *cert. denied sub nom. TitleMax of Del., Inc. v. Vague*, 142 S. Ct. 2870 (2022) (same); *Media Matters for Am. v. Bailey*, Case No. 24-cv-147 (APM), 2024 WL 3924573, at *5–7 (D.D.C. Aug. 23, 2024) (following the Third Circuit in *Smith & Wesson*); *Trump v. James*, Case No. 1:21-cv-1352 (BKS/CFH), 2022 WL 1718951, at *9 (N.D.N.Y. May 27, 2022) (same).

### III.    Facial Versus As-Applied Challenge

The majority of courts have adopted a definition of facial challenges as those seeking to have a statute declared unconstitutional in all possible applications. *See, e.g.*, *Sabri v. United States*, 541 U.S. 600, 609 (2004); *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Steffel v. Thompson*, 415 U.S. 452, 474 (1974). As-applied challenges are construed as an argument that the act is unconstitutional as applied to particular plaintiffs. The Supreme Court has made clear that as-applied challenges are preferred. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 448–51 (2008) (discussing the preference for as-applied challenges as opposed to facial challenges). In *Salerno*, the Supreme Court stated that a "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully" and will only succeed if a litigant can "establish that no set of circumstances exists under which the Act would be valid." 481 U.S. at 745.

Given the early stage of this proceeding, that defendants have yet to submit any written response to the motion for temporary restraining order and preliminary injunction, and given the Supreme Court's preference for as-applied challenges, this Court considers only an as-applied

6

challenge at this stage of the litigation. The Court reserves its analysis of the facial challenge until a more fully developed record is presented to the Court.

### IV. Legal Standard For Temporary Restraining Order

Federal Rule of Civil Procedure 65(b) gives district courts the authority to enter a temporary restraining order for up to 14 days. Rule 65(d) further provides that every restraining order must: (A) state the reasons why it is issued; (B) state its terms specifically; and (C) describe in reasonable detail the acts restrained or required. The standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). District courts in the Eighth Circuit must consider four factors in deciding whether to grant a temporary restraining order or a preliminary injunction:

> (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.

*Wilbur-Ellis Co., LLC v. Erikson*, 103 F.4th 1352, 1355–56 (8th Cir. 2024) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)). "While no single factor is determinative, the probability of success factor is the most significant." *Id.* at 1356 (quoting *Home Instead*, 721 F.3d at 497). Furthermore, in the Eighth Circuit, laws passed through the democratic process are entitled to a "higher degree of deference." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). In such cases, it is never sufficient for the moving party to establish that there is a "fair chance" of success. *Id.* Instead, the appropriate standard, and threshold showing that must be made by the movant, is "likely to prevail on the merits." *Id.* Only if the movant has demonstrated that it is likely to prevail on the merits should the Court consider the remaining factors. *Id.*

A temporary restraining order "is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant," here, Jones Eagle. *See Turtle Island Foods, SPC v.*

*Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).  At the end of the day, however, "[a] district court has broad discretion when ruling on a request for preliminary injunction" or temporary restraining order.  *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1035 (8th Cir. 2016) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013)).

V.     **Discussion**

Turning to the instant case, the Court finds that Jones Eagle has carried its burden of establishing that a temporary restraining order is appropriate under the four-factor test outlined above.  First, Jones Eagle is threatened with irreparable harm if Defendants initiate enforcement actions against it under Act 636 or Act 174.  Jones Eagle's complaint alleges that on December 13, 2023, pursuant to Act 636, defendant Secretary Ward referred Jones Eagle to defendant Attorney General for "potential violations" of Act 636 in order to "commence appropriate legal action" against Jones Eagle if such violations had indeed occurred (Dkt. No. 1, ¶¶ 104–09).  Since that time, Jones Eagle has been subject to investigation by the Office of the Attorney General of Arkansas, which has allegedly refused to protect Jones Eagle's confidential business records from public disclosure and refused a clawback request of Jones Eagle's privileged materials obtained from a third party without Jones Eagle's consent (*Id.*, ¶¶ 110 – 117).  The Attorney General's Office has also allegedly refused Jones Eagle's requests to meet and confer with respect to the suspected violations (*Id.*, ¶ 113).

Jones Eagle has provided an affidavit of Qimin "Jimmy" Chen, Jones Eagle's principal, personally attesting to the truth of the allegations in the complaint (Dkt. No. 7-1).  The affidavit also attests that, if the Attorney General commences further enforcement actions under Act 636 or Act 174, Jones Eagle faces irreparable harm even if it ultimately prevails against the charges, in

the form of damaged reputation and loss of goodwill (*Id.*, ¶ 31).  Moreover, if the Attorney General were to bring charges successfully, Jones Eagle and Mr. Chen face imprisonment, fines, and judicial foreclosure without compensation of Jones Eagle's property (Dkt. No. 1, ¶¶ 62, 92, 94).  Under these circumstances, the Court finds that the first factor weighs in favor of Jones Eagle.

Second, granting the temporary restraining order will cause no appreciable harm to Defendants.  At most, the Attorney General faces a delay of two weeks in taking formal legal action against Jones Eagle under Act 636 or Act 174, whereas the ongoing cloud of investigation and the constant threat of legal action have caused Jones Eagle to suffer real, ongoing harm.  The Court thus finds that the second factor weighs in favor of Jones Eagle.

Third, Jones Eagle has established that it is "likely to prevail on the merits," as required by *Rounds*.  The Court finds persuasive in this regard the recent decision of the Eleventh Circuit in *Yifan Shen v. Commissioner, Florida Department of Agriculture, et al.*, Case No. 23-12737, 2024 U.S. App. LEXIS 2346 (11th Cir. Feb. 1, 2024), granting a preliminary injunction pending appeal to two plaintiffs challenging a pair of Florida statutes substantially similar to the Arkansas statutes at issue here on federal preemption grounds much like those raised in Jones Eagle's complaint (*See Id.*, ¶¶ 177–93).  *See also id.*, at *5–10 (Abudu, J., concurring) (examining equal protection challenges similar to those raised here by Jones Eagle).  The Court therefore finds that the third factor weighs in favor of Jones Eagle at this stage of the litigation and on the limited record before it.

Fourth, the public interest would best be served if the temporary restraining order is granted.  Jones Eagle has presented arguments that Act 636 and Act 174 are unconstitutional and has established—at least at this stage of the litigation—that it is likely to succeed on the merits.  The challenged statutes represent an interference with private contract and property rights and, in

the case of Act 636, carry the threat of a felony conviction and imprisonment as well.  Thus, given the demonstrated likelihood that Jones Eagle will prevail on the merits, the public interest is best served by enjoining their enforcement against Jones Eagle pending further developments in this litigation.  As such, all four factors of the preliminary injunction analysis weigh in favor of Jones Eagle.

### VI. Conclusion

For the foregoing reasons, the Court in its sound discretion grants Jones Eagle's request for a temporary restraining order (Dkt. No. 7).  The Court enjoins Defendants, and all those acting in concert with them, from enforcing any provision of Act 636 or Act 174 against Jones Eagle or its principal, Qimin "Jimmy" Chen, within the time permitted by Rule 65(b)(2).  The Court will enter a separate Order setting a date for a contested hearing on Jones Eagle's request for a preliminary injunction and related deadlines (*Id.*).

It is so ordered this 25th day of November, 2024.

_____
Kristine G. Baker
Chief United States District Judge