IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JONES EAGLE, LLC**                                                   **PLAINTIFF**

**v.**                     **CASE NO.: 4:24-CV-00990-KGB**

**WES WARD, in his official capacity as the Secretary of the**         **DEFENDANTS**
**Arkansas Department of Agriculture; TIM GRIFFIN in his**
**official capacity as the Attorney General of Arkansas; and**
**STATE OF ARKANSAS**

## PLAINTIFF JONES EAGLE, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANTS' DISCLOSURES AND DISCOVERY PRODUCTION

### I.      INTRODUCTION

On July 31, 2025, plaintiff Jones Eagle, LLC ("Jones Eagle") served interrogatories and requests for production of documents on defendants Attorney General Tim Griffin ("the Attorney General") and Secretary of Agriculture Wes Ward ("Secretary Ward"). After requesting and obtaining a 30-day extension, the Attorney General served his objections and responses on September 29, 2025. Jones Eagle agreed to three separate deadline extension requests from Secretary Ward. Secretary Ward served his objections and responses October 20, 2025.

The Attorney General asserts investigatory privilege, deliberative process privilege, attorney-client privilege, and the work product doctrine without establishing their predicates. Secretary Ward asserts investigatory privilege while disputing that he investigated Jones Eagle. Defendants' privilege assertions are meritless. Defendants' answers are failures to disclose, answer, and respond. And Defendants have failed to produce or disclose responsive communications.

Despite extensive conferral, the parties cannot reach agreement. So, Jones Eagle moves for an order overruling Defendants' improper objections and compelling complete responses. To avoid

further prejudice and to maintain the current scheduling order, Jones Eagle requests expedited consideration of this motion and a hearing before the Court.

## II. LEGAL STANDARD

Jones Eagle has the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The Rule is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Cave v. Thurston*, 2021 WL 4936185, 1 (E.D. Ark. Oct. 22, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to admissible evidence.").

"The spirit of Rule 26(a) is that discovery be self-effectuating, without need to resort to the Court, and that its scope be liberal, extending to all matters reasonably calculated to lead to admissible evidence. This standard is well-ensconced and is generally known and understood by civil practitioners." *Cave*, 2021 WL 4936185 at 1 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947); *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134 (8th Cir. 1968); *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 22 (D.C. Cir. 1984); *National Organization for Women, Inc. (NOW), St. Paul Chapter v. Minnesota Min. & Mfg. Co.*, 73 F.R.D. 467 (D. Minn. 1977); *Carlson Cos., Inc. v. Sperry and Hutchinson Co.*, 374 F. Supp. 1080, 1100 (D. Minn. 1974)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or

tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

"The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### III.    ARGUMENT

**A.    Defendants' privilege assertions are meritless.**

"Privileges, as exceptions to the general rule, 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.'" *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). As the parties relying on privilege to refuse disclosure, Defendants have the burden to establish any privilege applies. *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020).

The Attorney General withholds at least 263 pages of responsive materials and served incomplete answers to Jones Eagle's interrogatories premised upon blanket assertions of the

deliberative process privilege, investigatory privilege, attorney-client privilege, and work-product protections. The Attorney General has failed to confer with Jones Eagle about the qualified privileges he relies upon. The Attorney General has not clearly designated attorney and client for purposes of the attorney-client privilege and work-product doctrine.

Secretary Ward asserts only the investigative file privilege over two documents (OAG-004207 and OAG-004186). Yet Secretary Ward claims "the Department is not admitting or otherwise conceding that it conducts investigations under Act 636." That statement is irreconcilable with any "investigatory privilege" and renders any such privilege unavailable.

Though the parties have conferred extensively, these matters require court action. Accordingly, Jones Eagle requests that the Court overrule Defendants' improper privilege assertions and omissions of responsive communications and compel Defendants to make complete production in response to Jones Eagle's interrogatories and requests for production.

1.    *The deliberative process privilege does not apply.*[1]

As an initial matter, the Attorney General has not shown his standing to assert the deliberative process privilege. "[T]he deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). "The privilege, however, is a qualified one and is subject to exceptions." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 245 F.R.D. 393, 396 (S.D. Iowa 2007). "[It] protects only documents which are pre-decisional, deliberative and reflect the subjective intent of the legislators." *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) (citing *Qamhiyah*, 245 F.R.D. at 396-97). For the privilege to apply, "[t]he document must

---

[1] Only the Attorney General asserted the deliberative process privilege.

have been prepared before the law or policy was enacted, must relate directly to the decision making process, and must contain opinion or subjective material." *Id.* (citing *Missouri Coalition for Envt'l Found. v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1211 (8th Cir. 2008)).

Even assuming it could apply here, the deliberative process privilege is qualified, not absolute. Courts may order disclosure notwithstanding the privilege after evaluating the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Qamhiyah*, 245 F.R.D. at 396 (quoting *F.T.C. v. Warner Comm's, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).

The Court need not engage in this balancing process because the deliberative process privilege is inapplicable here:

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination . . . .The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. If Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'être evaporates.

*In re Subpoena*, 145 F.3d at 1424 (internal citations and quotations omitted). Moreover, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). "[S]hielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Id.*

Federal courts reject the deliberative process privilege when plaintiffs allege constitutional violations springing from the government's decision-making process and need to develop evidence

of actual intent. *E.g.*, *Doe 2 v. Esper*, 2019 WL 4394842, at *7 (D.D.C. Sept. 13, 2019) ("[T]he deliberative process privilege should not be used to shield discovery into Defendants' decision-making process and intent when the extent and scope of that decision-making process is a central issue in this lawsuit."); *Elkins v. District of Columbia*, 250 F.R.D. 20, 27 (D.D.C. 2008) (deliberative process privilege inapplicable when the plaintiffs challenged the intent and mental state of government defendants); *Qamhiyah*, 245 F.R.D. at 397 ("[A]pplying the deliberative process privilege to an allegedly discriminatory employment decision would impair enforcement of Title VII by shielding probative evidence of motivation from view."); *Alleyne v. N.Y. State Educ. Dep't*, 248 F.R.D. 383, 388 (N.D.N.Y. 2008) (ordering federal agency to disclose documents because "when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery"); *Scott v. Bd. of Educ. of City of E. Orange*, 219 F.R.D. 333, 337-38 (D.N.J. 2004) (rejecting privilege in Title VII case because its application would permit the government "to insulate itself from accountability from potential civil rights violations"). *Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003) ("[T]his Circuit does not permit the application of the deliberative process privilege to thwart discovery of information in a case in which a plaintiff challenges governmental action as discriminatory"); *Newport Pac. Inc. v. Cnty. of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) ("[T]his is an action alleging violations of federal constitutional magnitude. The tendency is therefore to allow discovery.").

Jones Eagle's constitutional claims in this case arise directly from investigations undertaken in concert by Defendants under Acts 636 and 174. Jones Eagle seeks information from Defendants about the real-world application of Acts 636 and 174, and how Defendants' intentional

conduct has impacted Jones Eagle and other investigative targets. Defendants' intent goes to the heart of Jones Eagle's claims. Therefore, the deliberative process privilege does not apply.

Defendants' decision-making process is no collateral matter. The factual basis for Defendants' knowledge or beliefs about Jones Eagle's race, national origin, and alienage are elements of Jones Eagle's claims in this litigation. Defendants have not met their burden to show that the deliberative process privilege applies to block Jones Eagle's discovery requests. The Court should not permit Defendants to use the deliberative process privilege to shield evidence from discovery. The Court should overrule Defendants' objections and compel their complete responses to Jones Eagle's discovery requests.

2. *The investigative file privilege does not apply.*

The investigatory privilege is "a limited, federal common law of privilege which protects criminal investigatory files." *Lykken v. Brady*, 2008 WL 2077937, *5 (D.S.D. May 14, 2008) (citing *Stephens Produce, Inc., v. Nat'l Labor Relations Bd.*, 515 F.2d 1373, 1376 (8th Cir. 1975)). The privilege is "a very narrow one and need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it." *Stephens Produce*, 515 F.2d at 1376-77. "The privilege is predicated on the public interest in minimizing the disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *S.E.C. v. Shanahan*, 2009 WL 1955747, *1 (E.D. Mo. July 6, 2009).

Defendants must establish three prerequisites to assert the investigatory privilege: "(i) the head of the department having control over the information requested must assert the privilege; (ii) the official in question must do so based on actual personal consideration; and (iii) he or she must specify the information purportedly covered by the privilege, and accompany the request with an explanation as to why such information falls within the scope of the privilege." *Shanahan*,

2009 WL 1955747 at *2 (quoting *In re Adler, Coleman, Clearing Corp.*, 1999 WL 1747410, at *3 (S.D.N.Y. Dec. 8, 1999)). The investigative privilege "cannot be utilized by executive agencies to indiscriminately hide all nominally 'investigatory materials' from public scrutiny." *Stephens Produce*, 515 F.2d at 1377.

The Attorney General is the "head of the department" but has not asserted the privilege. Instead, the Attorney General has refused Jones Eagle's requests during conferrals that he sign his interrogatories. *See* Fed. R. Civ. P. 33(b)(5).[2] By failing to comply with Rule 33(b)(5), and by failing to specify and explain the appropriate scope of the privilege, the Attorney General has not met his burden to show that any privilege invocation is based on "actual personal consideration." Secretary Ward has too failed to establish that his privilege assertion is based on "actual personal consideration."

Both Defendants assert blanket refusals by claiming application of qualified privileges. But the privilege logs provided by the Attorney General and Secretary Ward contain only conclusory statements to claim investigatory privilege applies. As detailed below, the Attorney General has failed to divulge multiple communications arising from these investigations which Jones Eagle has obtained through discovery and which show the prejudice sustained by Jones Eagle's principle, Qimin "Jimmy" Chen.

Such "mere incantation" of the privilege does not suffice. Rather, to satisfy Rule 26(b)(5)(A), Defendants "must adduce facts sufficient to determine that the privilege applies, that the policy behind the privilege will be furthered by applying the privilege, and that the needs of the agency for privacy outweigh the litigant's need for the documents." *Lykken*, 2008 WL 2077937 at *5 (quoting *Stephens Produce*, 515 F.2d at 1377); *see also Shanahan*, 2009 WL 1955747, at *2

---

[2] By contrast, Secretary Ward signed his interrogatory answers in compliance with Rule 33(b)(5).

("[A]cross-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice.").

   *3)*  *To the extent balancing is appropriate, all four factors favor disclosure.*

   Under federal law, to the extent any "investigatory" or "deliberative process" privilege might attach, any such privilege is qualified, not absolute, and to be strictly construed in favor of disclosure. Defendants fail to show their need for non-disclosure outweighs Jones Eagle's compelling need for the discovery. All four factors under the balancing test weigh in favor of disclosure: (1) the evidence sought is highly relevant to Jones Eagle's claims; (2) the evidence is not available from any other source besides Defendants; (3) the Defendants are parties to the suit; and (4) any risk that disclosure would hinder internal discussions is minimal and outweighed by the other factors. *See In re Prempro Prods. Liab. Litig.,* 2006 WL 751299, at *1 (E.D. Ark. Mar. 20, 2006) (granting motion to compel government agency transcripts after weighing factors).

   Jones Eagle's need for relevant evidence outweigh any purported privilege. Jones Eagle seeks information about the factual basis for investigations undertaken by Defendants under Acts 636 and 174. Jones Eagle is entitled to that discovery, and Defendants' resistance to the disclosures prejudice Jones Eagle's ability to present its claims fully and fairly for judicial determination. During conferral, Jones Eagle requested that Defendants balance Jones Eagle's need for the discovery against Defendants' asserted need for non-disclosure. Defendants refused that request: "[t]o the extent that you want us to conduct some sort of balancing, we would posit that it is the role of the court to decide whether a qualified privilege applies, and we will make the arguments necessary to make that showing in front of the court." Ex. 1, Letter of Oct. 14, 2025, at 2.

   Jones Eagle brings constitutional claims challenging Acts 636 and 174, including under the Equal Protection Clause, which guarantees Jones Eagle's rights to be free from invidious

discrimination based on race, national origin, or alienage absent narrowly tailored to satisfy a compelling state interest. Jones Eagle has the right to develop evidence of Defendants' motivations in enforcement of Acts 636 and 174. Jones Eagle has the right to test the evidence of any compelling state interest and narrow tailoring on which Defendants may rely, or the lack thereof.

In response to Jones Eagle's conferrals, Defendants refused to engage in that process, instead stating "it is the role of the court" and that they are not obligated to engage in discussions of balancing as part of the conferral process. Defendants are mistaken. The Federal Rules of Civil Procedure and this Court's Local Rules require Defendants to confer in good faith on this issue. Fed. R. Civ. P. 37(a)(1); Local Rule 7.2(g). Defendants' refusal to confer about the balance of the parties' competing interests prejudices Jones Eagle, which cannot assess Defendants' position before submitting this motion for the Court's consideration.

Despite refusing to confer about the balancing test as required, Defendants nevertheless requested that Jones Eagle provide authority about the qualified federal common law deliberative process and investigatory privileges. Jones Eagle did so on October 27, 2025. Rather than engage with those authorities, Defendants stated "Thanks for the information below. We intend to stand on our objections." Ex. 2, Email Correspondence of October 27, 2025.

By failing to confer on these points, Defendants have failed to meet their burden of establishing the availability and propriety of the qualified privilege. Thus, disclosure is necessary. *See Hansen v. Allen Mem. Hosp.*, 141 F.R.D. 115, 124 (S.D. Iowa 1992) (rejecting assertion of investigative file privilege by "weighing the need for truth against the importance of the policy sought to be furthered by furthered by the confidential privilege"). Since Defendants never communicated their position to Jones Eagle during the conferral process, Jones Eagle believes a hearing would be necessary to ensure Jones Eagle can address arguments presented for the first

time outside the conferral process. Alternatively, the Court may deem any belated arguments waived based on Defendants' failure to confer.

In conclusion, if the Court finds that these qualified privileges might apply, then the Court should engage in the balancing test to find that Defendants' qualified privilege objections are invalid given Jones Eagle's substantial interest in obtaining the discovery. The Court should overrule Defendants' qualified privilege objections and mandate that Defendants submit complete answers and document productions within 7 days of the Court's ruling deciding this motion.

4)      *The Attorney General has not established application of attorney-client privilege.*

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege is narrowly construed and "protects only those disclosures— necessary to obtain informed legal advice—which might not have been made absent the privilege." *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020). The privilege applies only if:

> (1) [T]he asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 958 (D. Minn. 2023) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977)).

Jones Eagle filed this lawsuit against both the Attorney General and Secretary Ward in their official capacities. While each is a separate defendant in this lawsuit, the Attorney General's office represents both Attorney General Griffin and Secretary Ward. Acting together, Secretary Ward's office and the Attorney General's office conducted the underlying investigation of Jones

Eagle giving rise to this lawsuit. Numerous conversations between Defendants about that investigation precede this lawsuit. The Attorney General has not shown how those pre-litigation conversations were undertaken as part of an attorney-client relationship. Still, the Attorney General invokes the attorney-client privilege to refuse disclosure.

In his privilege log, the Attorney General claims the attorney client privilege to protect all communications regarding the investigations between deputy attorneys-general and even communications about Defendants' investigations between non-attorney agents of the Attorney General's office (*e.g.* Walter Mahone, Deputy Chief of Special Investigations) and non-attorney agents of the Department of Agriculture's office (*e.g.* Billy Black, Law Enforcement Chief). Ex. 3, Attorney General's Privilege Log, revised October 14, 2025. But of course, the attorney-client privilege requires that at least one participant in the communication be an attorney, or at least be acting for the purposes of provisioning legal advice from an attorney to a client.

The Attorney General claims his or his agents' involvement triggers attorney-client privilege for all conversations. That is not the law. "The Eighth Circuit has held that including an attorney in a discussion or as an addressee of a communication does not make that communication privileged." *Harvey v. Great Circle*, 2020 WL 6544237, at *4 (E.D. Mo. Nov. 6, 2020) (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987)).

In evaluating whether an attorney-investigator is providing legal advice to trigger attorney-client privilege, courts have "emphasized the importance of the terms of engagement letter between the client and the investigator to determine the applicability of the privilege and whether legal advice was sought." *Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 958 (D. Minn. 2023). "When the attorney is doing work that 'could have been performed just as readily by non-lawyers[,] then the client is not a client for purposes of the attorney-client privilege." *Thomas*, 690

F. Supp. 3d at 958 (quoting *Diversified Indus., Inc.*, 572 F.2d at 603 (internal quotations omitted)).

"The party asserting the privilege bears the burden to provide a factual basis for its application."

*Thomas*, 690 F. Supp. 3d at 958 (citing *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523,

527 (D. Minn. 2002); *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985)).

Here, Defendants have not shown that their agents or attorney-investigators made communications as legal counsel for the purpose of giving legal advice. Defendants have not shown who the attorney was and who the client was for attorney-client privilege to attach. The fact is—at least before this litigation—the Attorney General and Secretary Ward were acting together to investigate Jones Eagle, not as attorney and client discussing the provision of legal advice.

Jones Eagle faces prejudice caused by these improper privilege claims. Defendants insist, both before this Court and on appeal, that Jones Eagle lacks standing to bring this action. Jones Eagle's standing is a subject which Defendants have voluntarily placed at issue in this action, opening the door to discovery and limiting the scope of available privileges. Defendants may not argue that Jones Eagle lacks standing only later to invoke the privilege to block discovery of evidence which might rebut Defendants' position. To protect Jones Eagle against this potential prejudice, Jones Eagle requests that the Court conduct an *in camera* review of the discovery withheld under Defendants' attorney-client privilege assertions to decide the proper application and scope of the privilege and order production to the extent appropriate.[3]

---

[3] Jones Eagle acknowledges that the attorney-client privilege implicates thorny and fact-intensive issues in the light of the events giving rise to this action. Accordingly, Jones Eagle requests *in camera* review of those materials to protect any valid assertions of attorney-client privilege by the Defendants. By contrast, Jones Eagle requests that the Court overrule Defendants' qualified privilege assertions under the investigative file and deliberative process privileges and order production of those materials within 7 days after its order deciding this motion. No *in camera* review would be necessary since those privileges are inapplicable.

*5.      Jones Eagle has substantial need for withheld "work-product" materials.*

"The work product privilege is not absolute and may be waived." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002)." The party asserting the work-product privilege must prove a factual basis that "documents and tangible things" were "prepared in anticipation of litigation or for trial . . . by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

The work product privilege "should be 'applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis.'" *Pamida*, 281 F.3d at 732 (quoting *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)). In the Eighth Circuit, the test is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Arkansas Oklahoma Gas Corp. v. BP Energy Co.*, 2022 WL 1690266, at *2 (W.D. Ark. May 26, 2022) (quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987)). "[E]ven though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." *Id.*

Defendants have failed to meet their burden to trigger work-product protections. Defendant's privilege log states communications constitute "attorney work product," with no accompanying information or affidavit to allow Jones Eagle to assess the claim. *See* Ex. 3. In any case, work product is discoverable upon a showing of substantial need. Fed. R. Civ. P. 26(b)(3)(A).

Defendants posit that conversations regarding the investigations (even as they claim they haven't conducted any investigation) are protected work product because they relate to investigations. This misses the point. "The essential element . . . is that the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997). Defendants has failed to provide

any evidence that the withheld communications occurred in anticipation of litigation. Indeed, all but one withheld document predates Jones Eagle's filing of this lawsuit on November 13, 2024. Given the timeline, it appears the withheld communications were exchanged as part of the Attorney General office's routine business practice of initiating, conducting, and maintaining records of investigations and are not protected under the work-product doctrine. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977) (holding work product protection did not apply to memorandum and investigation prepared in the regular course of business); *Shukers v. Triumph Aerostructures, LLC*, 2014 WL 12638858, at *3 (W.D. Ark. Nov. 12, 2014) (granting motion to compel two investigative reports prepared as part of routine business practice).

While Defendants may claim litigation was a possibility before November 13, 2024, "the work product rule does not [] come into play merely because there is a remote prospect of future litigation." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977); *see also Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 955 (D. Minn. 2023) (rejecting argument that possibility that investigations could be legally challenged made all investigations covered by work product doctrine). At minimum, all materials exchanged before November 13, 2024, are presumptively not entitled to work-product protection. Defendants have not established, whether through a more detailed privilege log or affidavit, the November 20, 2024, communications are entitled to protection.

Defendants refuse to disclose materials which may be crucial to the Court's consideration of Jones Eagle's constitutional claims. Jones Eagle cannot obtain them by other means. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (privileged materials may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain

their substantial equivalent by other means"). Accordingly, even assuming work-product protections attach, the Court should order disclosure based on a finding of substantial need.

**B.    Defendants' failure to meet the substance of Jones Eagle's discovery requests are failures to disclose, answer, and respond.**

Jones Eagle also seeks an order compelling complete answers to its interrogatories and full responses to its requests for production of documents. The Attorney General and Secretary Ward have failed to answer numerous interrogatories and requests for production propounded by Jones Eagle. Jones Eagle requests that the Court find those responses to be evasive or incomplete disclosures, answers, and responses under Rule 37(a)(4).

Jones Eagle received the Attorney General's discovery responses on September 29, 2025. *See* Ex. 4, Attorney General's Responses to Discovery. The next day, Jones Eagle served a 12-page letter to confer about substantive deficiencies in the Attorney General's answers. Jones Eagle identified specific deficiencies in the Attorney General's answers to Interrogatories 2, 3, 4, 5, 6, 9, 11, 12, 13, 14, 15, 16, 17, and 18. Jones Eagle identified specific deficiencies in the Attorney General's responses to Requests for Production 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 14, 18, 23, 24, 25, 26, 27, 28, 31, 32, 33, 34, 35, and 36. Jones Eagle submits that letter as Exhibit 5 in support of this motion and incorporates the arguments of its letter by reference herein. Fed. R. Civ. P. 10(c).

After Jones Eagle served its letter, the parties conferred by videoconference. During that videoconference, the Attorney General requested time to prepare a written response to Jones Eagle's position. Jones Eagle agreed to the Attorney General's request. That written response came October 14, 2025, *see* Ex. 1, Letter of October 14, 2025, alongside supplemental responses.

Both the Attorney General's letter and the supplemental responses attempted to assert objections for the first time. Specifically, the Attorney General's conferral letter attempted to introduce objections based on ambiguity and vagueness, which hadn't been asserted in the

Attorney General's original responses. And the supplemental responses attempted to assert certain privilege objections for the first time, well outside the 30-day period allowed under the Federal Rules of Civil Procedure.

The Attorney General's belated objections are untimely and therefore waived. "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failures." Fed. R. Civ. P. 33(b)(4). Specifically, the newly asserted objections to Interrogatories 2, 3, and 4 and Requests for Production 7, 8, 33, 34, 35, and 36 are untimely and have been waived. As to the document production requests, "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Jones Eagle continued its efforts to confer, convening a second lengthy videoconference. But the parties' conferral efforts have not resulted in withdrawal of those waived objections.

To highlight certain interrogatories of particular importance to this action, the Defendants refuse to answer Interrogatory No. 6, which requests Defendants' state their knowledge or belief of the race, national origin, and alienage of each person they have investigated under Acts 636 and 174. *See* Ex. 1, at 6-7. Defendants' knowledge and beliefs are probative evidence of intent in bringing and maintaining this multi-year investigation into Jones Eagle. The Attorney General failed to timely object to this interrogatory. Fed. R. Civ. P. 33(a)(4). Defendants' refusal to answer Interrogatory No. 6 is improper.

Similarly, Defendants refuse to answer interrogatories "why" he decided to investigate Jones Eagle (*see* Interrogatory No. 9), and the Attorney General failed to explain the basis for issuance of subpoenas, including to Sharp County Title Co., which had the actual effect of blocking a lawful business transaction being undertaken by Jones Eagle's principle, Qimin "Jimmy" Chen.

*See* Ex. 1, at 8-9. Again, the Attorney General failed to timely object to this interrogatory. Fed. R. Civ. P. 33(a)(4). Defendants' refusal to answer Interrogatory No. 9 is improper.

On October 20, 2025, Jones Eagle received Secretary Ward's responses to discovery. *See* Ex. 6, Secretary Ward's Responses to Discovery. Included with these discovery responses was a privilege log. *See* Ex. 7, Secretary of Agriculture's Privilege Log. As outlined above, the same issues undermine Secretary Ward's privilege log.

Neither the Attorney General nor Secretary Ward have produced any text message communications in response to Jones Eagle's discovery requests. Neither the Attorney General nor Secretary Ward has logged any such text message correspondence on any privilege log exchanged in this action. Yet, as detailed below, responsive text-message communications exist. Accordingly, the Court should treat these non-productions as failures to disclose, answer, or respond. Fed. R. Civ. P. 37(a)(4).

Jones Eagle has the right to develop evidence in support of its claims. Defendants' refusal to produce these materials is groundless and prejudices Jones Eagle. As this Court found in *Cave*, Defendants' evasiveness violates both the text and spirit of the discovery available under the Federal Rules of Civil Procedure.2021 WL 4936185, at 1. Jones Eagle requests that the Court overrule Defendants' improper objections and compel Defendants to respond fully to Jones Eagle's interrogatories and requests for production.

**C.    The Attorney General's privilege log fails to list responsive communications.**

The Attorney General has produced both an original and revised privilege logs of materials responsive to Jones Eagle's discovery requests which the Attorney General withholds under claim of privilege. However, based on document production received in this action, the Attorney

General's document production and privilege failed to disclose responsive communications about the Attorney General's investigations under Acts 636 and 174. *See* Ex. 3.

At the preliminary injunction hearing, this Court admitted evidence that the Attorney General issued a subpoena to Sharp County Title, Inc. on February 28, 2024. A copy of that subpoena and enclosure letter is attached as Exhibit 8 to this motion. However, discovery has revealed that the Attorney General's subpoena to Sharp County Title Inc. was not the only Attorney General subpoena concerning that transaction the Attorney General issued that day. In fact, the Attorney General coordinated a second subpoena to Matt Reynolds, who was the putative seller in the targeted transaction, through that seller's counsel, Ron Burnett.

Despite specific conferral on this point, and without asserting any objection to Interrogatory No. 16, the Attorney General has failed to disclose the fact that the Attorney General coordinated issuance and service of that subpoena with Mr. Reynolds' lawyer, Ron Burnett. Instead, Jones Eagle had to obtain that evidence on its own. *See* Ex. 9, Screenshots of Text Messages between Deputy AG Alexandra Benton and Ron Burnett; Ex. 10, Attorney General's Letter and Subpoena to Matt Reynolds.

Third-party discovery obtained by Jones Eagle reveals that second subpoena was *requested by* Matt Reynolds, through his lawyer, Ron Burnett, who routed that request to the Attorney General via Arkansas State Representative Bart Schulz. Ex. 11, Email Correspondence between Burnett and Rep. Schulz; Ex. 12, Text Message Correspondence between Reynolds and Rep. Schulz. That coordination began as early as February 24, 2024, when Rep. Schulz began coordinating an investigation together with the seller, Matt Reynolds and his attorney, Ron Burnett. *See* Ex. 12, at 1. On February 27, 2024, Rep. Schulz notified Mr. Reynolds that "Alex from the

attorney generals [sic] office just left an email for your attorney," Mr. Burnett. *Id.*, at 2. Rep. Schulz's text message referred to Deputy Attorney (Alex) Benton.

The next day—the same day both subpoenas were issued—Deputy Attorney General Benton texted with Mr. Reynolds' lawyer Ron Burnett to coordinate the subpoenas. Ex. 9, at 1 ("Name of title company? Email address for your point of contact? Going to pull the trigger on this"). Then, Deputy Attorney General Benton coordinated service of the second subpoena to Mr. Reynolds. Ex. 9, at 2-3. As Jimmy Chen testified at this Court's preliminary injunction hearing, the Attorney General's subpoenas caused the transaction to collapse.

Indeed, that was the point. On March 22, 2024, Deputy Attorney General Benton wrote to Mr. Burnett, counsel to the seller, "[c]hecking in with you on the cave city property – if the transaction has been terminated I'd be happy to release your client from responding to the subpoena." Ex. 9, at 3. Mr. Burnett responded, "Yes, that looks to be the case. Thank you so much." *Id.* In reply, Deputy Attorney General Benton wrote, "Perfect." There is no discussion about whether the buyer—Mr. Chen—was subject to Act 636 or 174. Instead, the Attorney General's purpose was to terminate the transaction. Once that transaction was terminated, the Attorney General was "happy" to "release" the subpoena.

On March 23, 2024—the day after the Attorney General's text messages with his lawyer— Mr. Reynolds wrote to Rep. Schulz, "So far everything is stopped ***I don't know if they actually found out if they were Foreign Entities or not but all the Information about there [sic] names and stuff were.***" Ex. 12, at 3-4 (emphasis added). Rep. Schultz replied, "OK, that is the last I had heard as well. If you get any updates, please let me know. Have a good weekend." On May 13, 2024, months after the contract fell through—and days after Act 174 was enacted—Rep. Schultz

asked again, "[a]ny updates on the crypto deal?" Mr. Reynolds wrote to Rep. Schultz, "No Sir I haven't heard any updates from the Ag office but I did get out of the contract with them[.]"

The Attorney General produced a copy of this subpoena in their discovery production in this lawsuit. OAG-000245-246. But the Attorney General's revised privilege log fails to refer to this subpoena, except perhaps an entry on Page 10, documenting communications of February 28, 2024, between Deputy Attorney General Alexandra Benton and record counsel Deputy Attorney General Jordan Broyles, referencing "Discussions regarding draft subpoena." *See* Ex. 3, at 10.[4]

The Attorney General failed to produce any communications about this subpoena despite their proven existence. The Attorney General has produced no communications despite Rep. Schulz's statement, "that is the last I had heard as well." Ex. 12, 3-4, showing communications took place between the Attorney General and Rep. Schulz between February and March 2024.

These materials are probative evidence of Defendants' intent giving rise to this action. These third-party disclosures show Defendants have withheld responsive materials likely to contain evidence about the origins and purposes of subpoenas issued to "investigate" possible Act 636 violations. These disclosures show why Jones Eagle must obtain discovery from Defendants about these investigations. It is no defense to discoverability to suggest, as the Attorney General does, that "Attorney General Benton did not know of any connection to Jones Eagle […] prior to issuing the subpoena." If true, that simply illustrates why permanent injunctive relief should not be confined to the parties to this action and why facial relief is necessary.

---

[4] Given that the Attorney General issued two related subpoenas that same day, it is unclear to which "draft subpoena" that refers. The Attorney General has failed to explain why attorney-client privilege, attorney work-product, or investigatory privilege would attach. Any belated attempt would be untimely.

In sum, these disclosures and Defendants' failure to come clean about them show why this Court must exercise careful control over discovery. Defendants' refusals to disclose and produce responsive materials violate their obligations under the Federal Rules of Civil Procedure and threaten severe prejudice to Jones Eagle. This Court should exercise its authority to ensure that— moving forward—Defendants participate in the discovery process as required by the Federal Rules of Civil Procedure.

## IV. REQUEST FOR HEARING AND EXPEDITED CONSIDERATION

On August 27, 2025, the Court issued its amended final scheduling order, which sets trial on May 11, 2026. Dkt. No. 73 at 1. It sets a discovery cutoff of February 26, 2026. *Id.* Jones Eagle needs to obtain this discovery before the expert disclosure deadline, which is December 15, 2025. *Id.* Jones Eagle requests expedited consideration of this motion to preserve the current trial schedule, which has already been continued once before.

Jones Eagle believes a hearing would help resolve these matters. Jones Eagle and Defendants have widely differing views about the application and scope of available privileges. Additionally, Jones Eagle notes that Defendants' privilege logs invite *in camera* review of certain documents. Jones Eagle requests that the Court issue an order to schedule a pretrial conference to hear both this motion and the pending motion to enforce Jones Eagle's subpoena to certain non-parties. Dkt. No. 61.

Such a hearing would serve the purposes set out under Rule 16 of the Federal Rules of Civil Procedure. A hearing would promote judicial economy and serve the interests of justice. And a hearing would allow Jones Eagle to address any belated explanations offered by Defendants for their failure to comply with the broad, liberal, and self-effectuating process of civil discovery. *Cave*, 2021 WL 4936185 at 1.

## V. CONCLUSION

For the foregoing reasons, Jones Eagle requests that the Court grant its motion to compel disclosures and discovery production by Defendants, for its costs incurred in presenting this motion, and for all other relief to which it is entitled.

Dated: November 5, 2025

*Respectfully submitted*,

Frederick H. Davis
Alexander T. Jones
McKenzie L. Raub
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3740
Telephone: (501) 975-3000
Facsimile: (501) 975-3001
frederick.davis@kutakrock.com
alex.jones@kutakrock.com
mckenzie.raub@kutakrock.com

Peyton C. Watts
KUTAK ROCK LLP
1277 East Joyce Boulevard, Suite 300
Fayetteville, AR 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
peyton.watts@kutakrock.com

Robert S. Chang*
Shaleen Shanbhag*
Fred T. Korematsu Center for Law and Equality
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (949) 824-3034
rchang@law.uci.edu
sshanbhag@law.uci.edu

Paul L. Hoffman*
Director of the Civil Rights Litigation Clinic
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (310) 717-7373
hoffpaul@aol.com

*Attorneys for Plaintiff Jones Eagle, LLC*
*Admitted Pro Hac Vice*