IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| JONES EAGLE, LLC *f/k/a* JONES DIGITAL, LLC | PLAINTIFF |
| CASE NO.: 4:24-CV-00990-KGB | |
| WES WARD, in his official capacity as the Secretary of the Arkansas Department of Agriculture; TIM GRIFFIN in his official capacity as the Attorney General of Arkansas; and STATE OF ARKANSAS | DEFENDANT |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' DISCLOSURES AND DISCOVERY PRODUCTION**

Comes now Defendants, in their official capacities, for their Response to Plaintiff's Motion to Compel Defendants' Disclosures and Discovery Production, and state:

### I.  INTRODUCTION

On November 13, 2024, Jones Eagle LLC filed a lawsuit against Attorney General Tim Griffin and Secretary of Agriculture Wes Ward, in their official capacities, alleging that Act 636 and Act 174 violate the federal constitution. After a hearing on November 21, 2024, this Court granted a temporary restraining order (TRO) on November 25, 2024. After a hearing on December 4, 2024, the Court granted a preliminary injunction order enjoining Defendants from enforcing any provision of Act 636 or Act 174 against Jones Eagle on December 9, 2024. Defendants appealed this preliminary injunction order on January 7, 2025. The Court held a status conference hearing on February 27, 2025, and the Court entered an initial scheduling order on February 28, 2025. The parties submitted the Rule 26(f) conference report on March 21, 2025. The Court subsequently set bench trial sometime during the week of January 12, 2026. However, on August 13, 2025,

1

Plaintiffs submitted a joint motion to continue the scheduling order, which this Court granted on August 27, 2025. In accordance with the new trial date, the parties agreed to have discovery due on September 29, 2025.

The Attorney General made productions to Plaintiffs on September 29, 2025, complete with objections, responses, and a privilege log. *See* Pl. Ex. 4. One day later, Plaintiff's counsel sent the Attorney General a 12-page letter detailing Plaintiff's complaints about the discovery production. *See* Pl. Ex. 5 The parties agreed to have a call on Monday October 6, 2025, to discuss those concerns. *See* Def. Ex. A. The parties conferred for an hour and half about the contents of the letter, including discussion about various privilege assertions and proposed supplementary production. Based on that discussion, the Attorney General produced supplemental responses on October 14, 2025, ultimately producing around 3,763 pages of additional documents. *See* Pl. Ex. 1. Additionally, the Attorney General provided a written response to address many of Plaintiff's counsel's objections and an updated privilege log. *See id.* After this production, the parties had a second conferral about discovery on October 17th. Once again, the parties extensively discussed for over an hour the continued discovery disputes. In particular, the focus of the conversation was on whether the investigatory, deliberative, and attorney-client privileges were properly applied. On October 24th, Attorney General made a second supplemental production which included newly obtained communications that were responsive to the original requests, an updated privilege log, and two verification forms. *See* Pl. Ex. 13 and 14.

Secretary Ward made his production to Plaintiffs on October 20, 2025. *See* Pl. Ex. 6. Secretary Ward did not completely withhold any documents but simply made two redactions that were recorded in a privilege log sent to Plaintiffs. *See* Pl. Ex.7. Defendant Wes Ward has withheld close to nothing. In fact, even when objections were raised in response to Interrogatories and

Requests for Production, Defendant Wes Ward clearly delineated that he had not withheld any information or documents on the basis of that objection. *See* Pl. Ex.6. Nevertheless, Plaintiff's counsel responded to this production on October 27, 2025, and reiterated identical disagreements over our use of the investigatory and deliberative privileges that had been repeatedly debated by the parties' counsel. Counsel raised objection to the redaction of the email recipient (the only two redactions of the whole production) and then provided its batch of case law he believed supported his position. *See* Pl. Ex. 2. Plaintiff's counsel ended his email saying "We have discussed these privileges at length through two videoconference conferrals and in extensive written conferral. If you intend to stand on your privilege assertions, please let us know by October 30, 2025, so that we may present this matter to the Court for resolution of the parties' disagreements." *See id.* As Defendant Wes Ward had nothing further to produce and did intend to withhold the redacted cc'd recipient under investigatory privilege, Defendant Wes Ward's counsel responded that that we intended to stand by those objections on October 30, 2025. *See id.*

Defendants continued to examine the applicability of the privileges, particularly the application of the investigative, deliberative process, and attorney client/attorney work product privileges. Defendants have also considered Plaintiff's need for discovery and the necessary progression of discovery in this litigation.

Accordingly, on November 19, 2025, Defendants made a Third Supplemental Production. Def. Ex. B and E. This production produced all items previously withheld under the privilege log, with only a handful of redactions. The redactions were not based on deliberative process privilege or attorney client privilege. *See* Def. Ex. C. Moreover, Defendants removed the vast majority of objections to the Interrogatory responses and answered them fully upon the basis of Defendant's current knowledge. *See* Def. Ex. B. Accordingly, as it stands now, investigatory privilege has only

been asserted to a single redacted email address of a non-state law enforcement actor who is unrelated to investigations under Act 636 or Act 174. Moreover, Defendants have only asserted work-product privilege as it relates to redactions made on documents produced, as can be seen in our updated privilege log. We will examine the assertion of those privileges below and respond to any remaining arguments by the Plaintiffs as to the further production of this information.

## II. ARGUMENT

### A. Privileges

#### 1. *Deliberative Process Privilege*

Plaintiff's complaint about the deliberative process privilege has been resolved. Defendant Tim Griffin has removed all objections based on deliberative process privilege in his responses and objections to Plaintiff's First Set of Interrogatories and Requests for Production. *See* Def. Ex. B. The Department of Agriculture did not raise the objection in its responses to written discovery. Defendant Tim Griffin raised these objections based on sound case law and not frivolously as alleged by Plaintiff.[1] The withdraw of the privilege is not a concession on the applicability, but

---

[1] Although Defendant Tim Griffin has removed this privilege, Defendant does not concede or otherwise agree with Plaintiff's contention that these privileges are wholly inapplicable and that we were not entitled to assert them. Defendant initially raised this objection because it was applicable as a qualified privilege under federal common law. *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 606 (W.D. Tenn. 2009) (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975) (**"**The deliberative process privilege protects from discovery 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"). "[T]he key issue in applying this exception is whether disclosure of the materials would expose an agency's decision making process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Rugiero v. U.S. Dep't of Justice,* 257 F.3d 534, 550 (6th Cir.2001) (internal quotation marks omitted). We only withheld materials under this privilege that "cover[ed] recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect[ed] the opinions of the writer." *Rugiero*, 257 F.3d at 550 (citations omitted). The fact that information protected by the deliberative process privilege may contain "case specific information" "does not necessarily mean that it is ripe for discovery." *Burlington*, 621 F.Supp.2d at 607. "[S]ome documents, although related to a particular complainant's case, could nevertheless expose the agency's decisionmaking process and chill the free and open exchange of ideas if left unprotected by the privilege." *Id.* at 608. Importantly, even when discrimination has been alleged, a court may still find that disclosure "would harm open and frank communication within the agency." *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291, 294 (N.D.W. Va. 1992) (upholding deliberative process privilege despite request for internal communications in Title VII discrimination case); *E.E.O.C. v. Texas Hydraulics, Inc.*, 246 F.R.D. 548, 552–53 (E.D. Tenn. 2007) (upholding deliberative process privilege even amidst allegation that the documents would reveal

rather for the purpose of efficiency. Accordingly, this Court need not decide whether deliberative process privilege applies in this context.

   2. *Investigative Privilege*

Plaintiff's complaint about the investigative privilege has also been resolved. Defendant Tim Griffin has removed all objections based upon investigative privilege with the exception of the redaction of a CC'd email recipient on two emails. As referenced in our privilege log, this individual is in law enforcement but is not a state actor and is not involved with any investigation under Act 636 or Act 174. *See* Def. Ex. C, Pl. Ex. 7. The emails themselves were produced so Plaintiff can see the author and other recipients of the email and the contents of the email.

The investigatory privilege "balances the public interest in nondisclosure of such files against the need of the particular litigant for access to the privileged information." *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1061 (W.D. Ark. 2005). Moreover,

> [the] party asserting law enforcement investigatory privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation.

*In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (cleaned up). Here, the identification of this actor is not relevant to Plaintiff's case, and conversely, Defendant Tim Griffin has a significant need for confidentiality of this person's identity. The redacted recipient is not a state

---

Plaintiff's state of mind regarding alleged discrimination on the basis of religion because it would hinder frank and open internal communication); *Turner v. City of Chicago*, No. 15 CV 06741, 2017 WL 552876, at *3 (N.D. Ill. Feb. 10, 2017) (reasoning that if such "rationale were accepted by the Court, the privilege would be overcome in any case in which the government's intent is called into question, rendering the deliberative process privilege a nullity. . . ."). In other words, "the mere allegation that a governmental unit acted improperly cannot open the door to its entire decision-making process without a further and careful examination of the relevance of particular documents to the specific allegations in the case." *Turner*, 2017 WL 552876, at *3. Based on our reliance on this law, we initially asserted these privileges.

actor, is not involved in investigating Act 636 or Act 174, and is not charged with enforcing Act 636 or Act 174. The Office of the Attorney General's working relationship with this actor may be hindered if this person is unnecessarily identified in litigation unrelated to our work with them. To avoid any further explanation nullifying the confidentiality of this source, we would request in-camera review before a ruling from the Court.

3. *Attorney-Client Privilege*

Plaintiff's challenge to the application of the attorney-client privilege communication has been resolved. Defendant Tim Griffin has not withheld any materials on the basis of attorney client privilege, as demonstrated by the supplemented privilege log. *See* Def. Ex. C. Defendant has only objected to the scope of Plaintiff's RFP Nos. 24, 33, 34 and 35. *See* Def. Ex. B. These requests lacked a temporal limit to the investigatory period and do not exclude attorney work product and attorney client communications created after the instant suit was filed. These requests, therefore, could be read to include drafts of pleadings, internal memoranda, attorney notes and materials prepared for the hearings, and internal communications regarding the defense of the suit. Beyond preserving that objection, Defendant Tim Griffin did not withhold any communications with clients under those requests for production. Defendant Wes Ward did not withhold any materials under attorney-client privilege. *See* Pl. Ex. 7. Therefore, an in-camera review is not necessary and there is no production to be compelled as it relates to attorney-client privilege.

4. *Attorney Work Product*

Plaintiff's protest to the objection based on attorney work product privilege is also resolved. Defendant has not withheld any investigatory materials under the attorney work product privilege. Instead, he has provided 13 emails with limited redactions of attorney commentary on strategy when communicating with counsel for Jones Eagle. *See* Def. Ex. C. It is evident from these emails

that they are forwards of communication from counsel for Jones Eagle and internal deliberations about how to respond. *Id.* Defendant Wes Ward did not withhold anything under attorney work product privilege. *See* Pl. Ex. 7.

In the Eighth Circuit, the test for whether a document falls under attorney work product protection is "whether, in light of the nature of the document and factual situation of a particular case, the document can fairly be said to have been prepared or obtained because of litigation." *Foster v. Clausen Miller, P.C.*, 23 F. App'x 606, 608 (8th Cir. 2001) (internal quotation marks omitted). "[T]he work-product of government attorneys created in anticipation of litigation is protected even if the litigation involves obligations under a statute, regulation, or a contract." *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 316 (2002). To obtain these materials, the Plaintiff must demonstrate a "substantial need of the materials to prepare its case" and that Plaintiff cannot "without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). However, even if a Plaintiff demonstrates this, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Our privilege log details how these specific communications are privileged as attorney-work product. *See* Def. Ex. C. However, we have produced the documents for review of non-privileged portions.

The earliest date on the privilege log is October 23, 2024. Prior to this date, the Attorney General's Office began engaging in communication with Jones Eagle's counsel, Alex Jones, about drafting a confidentiality agreement to produce documents responsive to the Attorney General's subpoena. The redacted portions of these communications represent the attorney's mental impressions and legal strategy concerning not only the drafting of the agreement but also the possibility of having to enforce the subpoena in state court, which it ultimately did. Therefore, the

7

anticipated litigation was not a mere "remote prospect of future litigation," as Plaintiff's suggest. Doc. 75, at 15 (quoting *Diversified Indus., Inc v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977)). "[L]itigation may be anticipated long before it is actually commenced." *Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 955 (D. Minn. 2023) (internal quotation marks omitted). "The work product doctrine also extends not just to documents prepared in anticipation of litigation, but to documents prepared in anticipation of arbitration proceedings and *other adversarial proceedings*." *Id.* (internal quotation marks omitted). In other words, materials "prepared after a specific threat of litigation or other adversarial proceedings became palpable" may be protected. *Id.* (internal quotation marks omitted). Here, the emails between Alex Jones and Jeanna Sherrill, along with the correlating internal communications, demonstrate that the Attorney General's Office was preparing to have to enforce the subpoena. In fact, the redacted portions of the communications that fall between November 4, 2024, and November 9, 2024 are discussing the logistics of filing the petition for contempt in state court after Jones Digital failed to respond to the subpoena. Although Plaintiff's lawsuit concerning this lawsuit was not filed until November 13, 2024, Defendants were anticipating and ultimately initiating litigation against Plaintiff for failing to respond to the subpoena before November 13, 2024. Therefore, these emails, are protected under the attorney work product privilege.

The Plaintiff cannot demonstrate any substantial need for these materials because they represent the mental impressions and legal strategy of the attorneys, and further, these communications do not relate any underlying investigation under Act 636 or Act 174. Therefore, these redacted portions constitute attorney work product and should be protected under Federal Rule of Civil Procedure 26(b)(3).

## B. Alleged Deficiencies in Defendant's Discovery Responses

### 1. Text Messages Concerning Subpoena to Matt Reynolds

Plaintiff asserts that our privilege log is incomplete because it does not contain responsive communications Plaintiff obtained via a third-party subpoena. First, Plaintiff points to text messages between Representative Bart Schultz and Ron Burnett. Defendant would not have such communications in its possession, considering that neither of those parties are part of the Office of Attorney General or the Department of Agriculture. Rather, Plaintiff obtained these communications via a third-party subpoena. Second, Plaintiff attaches text messages presumably from Deputy Attorney General Alexandra Benton and Ron Burnett that Plaintiff claims we withheld. Our office did not and does have not these text messages in our possession. Alexandra Benton has confirmed that all text messages on her work phone only remain for one year, per the settings in her phone. Therefore, Defendant Tim Griffin and the Department of Agriculture had no responsive text messages in our possession to produce. Plaintiff admits that these text messages do not appear in either Defendants' privilege logs. Moreover, we did not conceal the existence of this subpoena or communications with Ron Burnett in our discovery production. Our production included the subpoena to Ron Burnett, as well as the correlating email in which Alexandra Benton issued the subpoena to him. *See* OAG 000238-46 produced on September 29, 2025. Through conferral, opposing counsel did not inform Defendant's counsel about these text messages but has waited until filing a motion to compel to do so. Had opposing counsel had asked, we would have explained why no such production was made. Rather than a "failure to come clean" as Plaintiff suggests, Doc. 75, at 22, the absence is explained by a simple fact: we do not have the text messages.

2. *Interrogatory Responses*

First, Plaintiff argues we "fail[ed] to comply with Rule 33(b)(5)" because Defendant Tim Griffin did not sign the interrogatories. Our interrogatories were signed by Defendants counsel and by Alexandra Benton and Walter Mahone. *See* Def. Ex. D. Under Rule 33(b)(1), interrogatories "must be answered: (A) by the party to whom they are directed; or (B) if that party is a . . . governmental agency, by any officer or agent, who must furnish the information available to the party." As Plaintiff has sued Defendant Tim Griffin in his official capacity, we had Alexandra Benton and Walter Mahone, agents of the Office of the Attorney General who were responsible for investigations under Act 636 and 174, sign the interrogatories. Rule 33(b)(5) requires that "[t]he person who makes the answers must sign them, and the attorney who objects must sign any objections." Here, Alexandra Benton and Walter Mahone, with the assistance of counsel, answered the interrogatories and responses for production. Therefore, they signed the Defendant's response, in compliance with the Federal Rules of Civil Procedure.

Beyond arguing that our privilege assertions were generally improper, Plaintiff only specifically highlighted two interrogatory answers it found to be insufficient. We would note that the Plaintiff's obligation in filing a motion to compel requires much more specificity than a general discussion of whether the privileges should apply. "Any ... motions to compel ... must be particularly stated. That is, *for each request plaintiff wants compelled*, he must specifically indicate the request, provide defendants' response, and precisely demonstrate why defendants' response is deficient." *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2017 WL 11489877, at *1 (E.D. Mo. Dec. 20, 2017) (quoting *Forest v. Barnes Jewish Hosp.*, No. 4:07-CV-258-DJS, 2008 WL 957681, at *2 (E.D. Mo. Apr. 7, 2008)). Plaintiff "do[es] argue some specific objections, [he] does so generally and largely without applying objections to specific requests." *Id.* at *2.

Accordingly, this does not allow the parties or even the Court to "properly analyze these layers of objections when the parties do not apply them to specific requests and explain how the different objections interact in the context of specific requests." *Id.* Instead of putting forward what specific requests Plaintiff is seeking to compel, Plaintiff references his 12-page letter sent on September 30, 2025, after Defendant Tim Griffin's first production on September 29, 2025. Doc. 75, at 16. However, the Attorney General has made ***three*** supplemental productions since then, along with two extensive conferrals with counsel about our objections. Although Plaintiff would prefer to emphasize our email on October 27, 2025, saying "We intend to stand on our objections," this email was sent almost a month later after two supplemental productions and two conferrals with opposing counsel. Between Defendant Tim Griffin's original production on September 29, 2025, and the Second Supplemental Production, Defendant had produced an additional 3,841 documents. On November 19, 2025, Defendants produced all documents previously withheld on its privilege log, with minor redactions. *See* Def. Ex. B and C. To insinuate that the September 30th letter could represent what Plaintiff wants compelled today is inaccurate. Plaintiff has not explained what concerns remain after the first two supplemental productions and what responses it believes remain insufficient.[2] Therefore, although we will explore the only two referenced interrogatories in Plaintiff's motion to compel, we would ask that the Court deny Plaintiff's motion to compel because they have failed to meet their burden as the movants to demonstrate *what* exactly they are seeking to compel production of.

First, Plaintiff asserts that we have "refuse[d] to answer" Interrogatory No. 6. Interrogatory No. 6 requests that Defendants state their knowledge or belief of the race, national origin, and

---

[2] Even Plaintiff's letter does not often identify what it believes to be sufficient. Rather, it makes blanket assertions that Defendant's answers are incomplete. Even if the Court relied on this letter, it would not meet Plaintiff's burden to demonstrate what it was looking to be compelled.

alienage of each person identified in response to Interrogatory No. 5. Interrogatory No. 5 requests Defendant to identify who has been investigated under Act 636 and Act 174. Defendants, in response to Interrogatory No. 5 and No. 6 listed the entities it had investigated under Act 636.[3] After listing them, the Defendant offered the knowledge and belief as to those entities' citizenship based on the information it had received about them from the entities. Defendant did not have "information or belief" as to the national origin or race of these entities because no such information was sought or collected as to these entities. Defendant has provided, both in interrogatory and responses to requests for production, "probative evidence of intent in bringing and maintaining" its investigations under Act 636. Doc. 75, at 17. Despite informing Plaintiff that we had offered all the information we had in our possession as to this Interrogatory, Plaintiff refuses to accept this answer and asks us to provide a speculative written answer binding the Office to a "knowledge and belief" of the entities' national origin and race, despite having no information in its possession informing such an answer.

Second, Plaintiff avers that Defendant refused to answer Interrogatory No. 9, which stated:

> Please state with specificity the factual basis for your investigation of Jones Eagle for potential violations of Act 636 and Act 174, including, but not limited to:
>     a.    Why you decided to investigate Jones Eagle;
>     b.    Who made the ultimate decision to investigate Jones Eagle;
>     c.    The date and time on which you received each complaint about Jones Eagle, pursuant to Act 636 or Act 174, to include all complaints of any character, whether formal or informal;
>     d.    The identity of each person who made each complaint about Jones Eagle pursuant to either Act 636 or Act 174, whether formal or informal; and
>     e.    The method by which your office received communication of each such complaint (*e.g.*, interbranch governmental referral; formal letter; facsimile transmission; telephone communication; email correspondence; text message communication; in-person meeting).

---

[3]There have been no investigations under Act 174.

Pl. Ex. 4. In Defendant's First Production, Defendant responded asserted investigatory privilege because the investigation into Jones Digital's compliance with Act 636 was not complete and Defendant had a significant interest in not hindering any future law enforcement investigation or revealing the internal processes of the Department's investigation. Subject to that objection, Defendant answered with the following:

> On or about October 19, 2023, the Attorney General received a phone call from Representative Jeremiah Moore to investigate Jones Digital, LLC's compliance with Act 636. On or about December 10, 2023, the Attorney General's Office received a formal request via letter from the Department of Agriculture to conduct an investigation into whether Jones Eagle, formerly known as Jones Digital, was in compliance with Act 636. The authority and the decision to investigate under Ark. Code Ann. § 18-11-804 and Ark. Code Ann. § 14-1-606 is vested with the Attorney General. The ultimate decision to investigate was made by Attorney General Griffin. The office has not conducted an investigation of Jones Digital under Act 174.

Pl. Ex. 4. Upon conferral, Plaintiff claimed that this answer was insufficient because the interrogatory

> does not ask the Attorney General to identify the statute giving him authority to investigate Jones Eagle. The interrogatory seeks information about 'why' he decided to investigate Jones Eagle, the identity of the ultimate decisionmaker, the date, time, and method of communication of each complaint against Jones Eagle, and the identity of each complaint made against Jones Eagle asserting violations of Acts 636 and 174.

Pl. Ex. 5. Defendant's Third Supplemental Response removed the investigatory privilege objection and answered the following:

> On or about October 19, 2023, the Attorney General received a phone call from Representative Jeremiah Moore to investigate Jones Digital, LLC's compliance with Act 636. On or about December 10, 2023, the Attorney General's Office received a formal request via letter from the Department of Agriculture to conduct an investigation into whether Jones Eagle, formerly known as Jones Digital, was in compliance with Act 636. The authority and the decision to investigate under Ark. Code Ann. § 18-11-804 and Ark. Code Ann. § 14-1-606 is vested with the Attorney General. The ultimate decision to investigate was made by Attorney General Griffin. The office has not conducted an investigation of Jones Digital under Act

174.

Def. Ex. B. Defendant removed the assertion of privilege because it determined that it was answering the interrogatory in a complete fashion and truly had nothing more to disclose or add. Plaintiff does not sufficiently explain what it believes is missing from this "why" or why this answer is insufficient.

Plaintiff does not identify any other interrogatory answers it finds insufficient. Therefore, we would request that the motion to compel a response as to any interrogatories, including the ones explored above, be denied.

### III. CONCLUSION

In light of Defendant's third supplemental disclosure and updated privilege log, Defendants do not believe a hearing is necessary to resolve these issues. However, we recognize that the Court may determine that a hearing is necessary for an in-camera review. Defendants further request for payment of expenses related to bringing this motion to compel be denied.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By: Ryan Hale, Ark. Bar No. 2024310
Senior Assistant Attorney General
Jordan Broyles, Ark. Bar No. 2015156
Senior Assistant Attorney General
Madalyn Goolsby, Ark. Bar No. 2024283
Assistant Attorney General

Office of the Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 295-7419
(501) 682-2591 fax
jordan.broyles@arkansasag.gov

*Attorneys for Defendants*