## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**JONES EAGLE LLC**                                                                    **PLAINTIFF**

**v.**                                    **Case No. 4:24-cv-00990-KGB**

**WES WARD, in his official capacity**
**as the Secretary of the Arkansas Department of Agriculture,** *et al.*          **DEFENDANTS**

### ORDER

Before the Court is plaintiff Jones Eagle LLC's ("Jones Eagle") motion to compel production of subpoena responses (Dkt. No. 61). Non-party Arkansas Oil and Gas Commission responded in opposition to the motion (Dkt. No. 66). Also before the Court is Jones Eagle's motion to compel disclosures and discovery production by defendants Wes Ward, in his official capacity as the Secretary of the Arkansas Department of Agriculture, and Tim Griffin, in his official capacity as the Attorney General of Arkansas (collectively, "Defendants") (Dkt. No. 74). Defendants responded to the motion (Dkt. No. 81), and Jones Eagle filed a reply (Dkt. No. 84). Jones Eagle also filed a motion for hearing on the pending motion to compel (Dkt. No. 87).

The Court granted the motion for hearing and conducted a hearing on these matters on January 23, 2026 (Dkt. No. 87). For the following reasons, the Court grants Jones Eagle's motion to compel production of subpoena responses (Dkt. No. 61). The Court grants, in part, denies as moot, in part, and holds under advisement, in part, Jones Eagle's motion to compel (Dkt. No. 74).

### I.     Third Party Subpoenas

Jones Eagle served subpoenas *duces tecum* on non-parties Lawrence Bengal, Kesia Morrison, and Daniel Pilkington ("Non-Parties") (Dkt. No. 61, at 1). At all times relevant to this proceeding, these Non-Parties worked for or with the Arkansas Oil and Gas Commission. Counsel

for the Non-Parties accepted service that same day (*Id.*).  The subpoenas *duces tecum* required compliance by 10:00 a.m. on April 11, 2025 (*Id.*).

To date, the Non-Parties have produced no documents in response to the subpoenas (*Id.*). Further, no timely motion to quash the subpoenas *duces tecum* was filed in this case, although a motion to quash was filed in *Arkansas Cryptomining Association v. Bengal, et al.*, Case No. 4:25-cv-234-KGB ("*Cryptomining* Case") (*see* Case No. 4:25-cv-234, Dtk. No. 22).

The Non-Parties responded in opposition to the current motion to compel (Dkt. No. 66). Their response to the current motion to compel tracks nearly verbatim with the motion to quash these subpoenas filed in the *Cryptomining* Case (*see* Cate No. 4:25-cv-234, Dkt. Nos. 22; 23).  The Non-Parties attempt to stand on the assertion that these document subpoenas "are a transparent attempt to circumvent Fed. R. Civ. P. 26(d)(1) precluding discovery before a Rule 26(f) conference in a different case," citing the *Cryptomining* Case (Dkt. No. 66, at 1).  As a result, the Non-Parties argue that, on this basis alone, the subpoenas are an undue burden and should be quashed (*Id.*, at 2).  Further, the Non-Parties assert that, when the requests are examined, those requests also constitute an undue burden because Jones Eagle has "[m]ost of the requested documents" in response to an Arkansas Freedom of Information Act ("FOIA") request and responding to the subpoena would require the Non-Parties "to review, compare, duplicate or potentially expand this production in an extremely short time frame," because they assert the requests are "wildly disproportionate to the needs of this case," and because they assert the requests are "almost certainly overly broad because [they] would include a number of documents not related to this case." (*Id.*, at 6).  As a result, the Non-Parties request that the Court quash the subpoenas in their entirety (*Id.*).  The Non-Parties also assert that the requested relief is moot, given that a hearing on April 11, 2025, in the *Cryptomining* Case passed (*Id.*).

2

The Non-Parties concede that they are not parties to this current litigation. The proper method under the Federal Rules of Civil Procedure to obtain document discovery from a third party is to issue a subpoena pursuant to Rule 45, which Jones Eagle has done. Further, the Non-Parties advocate a very narrow view of the facts underpinning this lawsuit, overlooking certain agreed upon topics of discovery among the parties in this case and written discovery requests and responses not objected to by the parties in this case. In this case, the parties' joint Rule 26(f) report states that, among other things: "Plaintiffs will seek discovery regarding compliance with the Court's temporary restraining order and preliminary injunction order in effect in this action by persons so bound under Fed. R. Civ. P. 65(d)(2)." (Dkt. No. 59, at 1).

Further, Interrogatory No. 18 requested, and Defendants responded:

INTERROGATORY NO. 18: Please identify the name, address, telephone number, and email address of each public official with whom your Office, and all persons acting in concert with your Office, communicated about the preliminary injunction order entered in this action on December 9, 2024 (Dkt. No. 35), specifically to include all persons employed by, consulting with, or otherwise acting on behalf of the Arkansas Oil and Gas Commission, and the approximate date and time of each such communication.

RESPONSE: On or about December 2, 2024, Kesia Morrison emailed Ryan Hale asking to call. Ryan Hale called Kesia Morris that same day. Kesia Morrison, 5301 Northshore Drive, North Little Rock, AR 72118, 501-682-0744 on December 2, 2024. On February 24, 25, and 26, 2025, Jordan Broyles and Kesia Morrison exchanged text messages. See Response to Request for Production No. 35. Please see the documents previously produced on September 29, 2025 under RFP No. 3 (OAG-000007-8) and on October 14, 2025 as RFP No. 35 SP (OAG-004007-10).

Undersigned counsel also communicated the court's decision on the preliminary injunction to the defendants.

(Dkt. No. 81-2, at 12–13). The documents sought through the Non-Party subpoenas are within the scope of the discovery agreed upon by the parties in this case; the documents sought by the Non-Party subpoenas are relevant and relate to discovery responses provided by Defendants in this case. That the issues involved in this case and the *Cryptomining* Case may be intertwined does not

diminish the relevance and discoverability of the documents in this case. For these same reasons, the relief requested in the motion to compel compliance is not moot.

That Jones Eagle utilized the Arkansas Freedom of Information Act to obtain documents previously also does not serve as a shield for the Non-Parties' failure to respond properly under the Federal Rules of Civil Procedure to a Rule 45 subpoena *duces tecum*. It is widely understood that the Arkansas Freedom of Information Act ("FOIA"), Arkansas Code Annotated § 25-19-101 *et seq.*, provides a floor, not a ceiling, to discovery in a civil case. *See SI03, Inc. v. Musclegen Rsch., Inc.*, Case No. 1:16-cv-274 RLW, 2020 WL 6544261, at *1 (E.D. Mo. Nov. 6, 2020) ("The scope of discovery under Rule 26(b) is extremely broad. . . . Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.") (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Moreover, any objection or complaint by the Non-Parties alleging an undue burden based on the timing of a response to these subpoenas fails, given the passage of time from service of the subpoenas to date.

To the extent the Non-Parties complain that the subpoenas *duces tecum* are overly broad and should be quashed by, for example, seeking "[e]ach cellular telephone you have used to send or receive text message communications since January 1, 2024" (Dkt. No. 61-1, at 4), there is support under the law that messages transmitted on private accounts may be subject to compelled disclosure, even under the Arkansas FOIA, provided the messages are about public business. *See Bradford v. Director of Employment Security Department*, 128 S.W.3d 20, 27–28 (Ark. Ct. App. 2003). ("We find nothing in the Freedom of Information Act that specifies that the communications media by which the public's business is conducted are limited to publicly owned communications. The creation of a record of communications about the public's business is no less subject to the

public's access because it was transmitted over a private communications medium than it is when generated as a result of having been transmitted over a publicly controlled medium.")  The Non-Parties make no meaningful argument to counter this.  The Court declines to quash the subpoenas *duces tecum* in their entirety over this issue, given the many ways the parties or the Court might resolve such disputes.  Instead, the Court modifies request number three to Lawrence Bengal and directs that Bengal identify in a sworn affidavit each telephone number he has used to send or receive text message communications that could reasonably be considered concerning, about, regarding, or related to public business, even if Bengal believes the communications should be private, since January 1, 2024.

For these reasons, the Court grants Jones Eagles' motion to compel compliance with the subpoenas *duces tecum* as modified by the Court in this Order (Dkt. No. 61).  The Non-Parties shall comply with the subpoenas *duces tecum* on or before Friday, February 13, 2026.

## II.    Motion To Compel

Jones Eagle filed its motion to compel defendants' disclosures and discovery production (Dkt. No. 74).  Defendants responded to the motion and represented in their response that all, or nearly all, disputes should be resolved because of Defendants' multiple supplemental responses and productions to Jones Eagle's outstanding discovery requests (Dkt. No. 81).  In its reply, Jones Eagle acknowledges that, after withholding "responsive materials for months," at the "eleventh hour, [Defendants] partially withdrew meritless privilege assertions and made supplemental production.  Defendants admit they failed to preserve probative materials they have not produced." (Dkt. No. 84, at 1).

During the hearing conducted by the Court, Jones Eagle narrowed the discovery issues that remain in dispute pursuant to the motion to compel to the following:  (1) a request for the Court to

review *in camera* and under seal redacted documents from Defendants' production to assess the merits of claims under which Defendants are withholding information; (2) a request that Defendants be required to respond by answering the interrogatories propounded by Jones Eagle with responsive information, not non-responsive or non-answer responses; and (3) a request that the Court address with Defendants their ongoing obligation to preserve and produce ESI and what appears to be a failure to do so.

### A.    Redacted Documents

Jones Eagle requests that the Court review *in camera* and under seal redacted documents from defendants' production to assess the merits of claims under which Defendants persist in withholding information and documents.  In their written response, Defendants maintain that, with their third supplemental production, Defendants opt not to assert the deliberative process privilege (Dkt. No. 81, at 4).  Defendants "removed all objections based upon investigative privilege with the exception of the redaction of a CC'd email recipient on two emails." (*Id.*, at 5).  The parties have briefed and argued that issue.  Although Defendants assert that attorney-client privilege and attorney work product disputes have been resolved, issues remain with regard to both the attorney-client privilege and attorney work product (*Id.*, at 6-8).  Defendants produced current privilege logs with their third supplemental responses and tendered withheld documents to the Court for *in camera* and under seal review.

"Privileges, as exceptions to the general rule, 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.'"  *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).  As the parties relying on privilege to refuse disclosure, Defendants have the burden to establish any privilege applies.  *See United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020).

### 1.    Investigatory Privilege:  Redacted OAG-004088-89

Jones Eagle, in its briefing and at the hearing, focused arguments related to the investigatory privilege on two documents specifically—OAG-004088 and OAG-004089.  As Jones Eagle notes, Defendants assert, "Defendant Tim Griffin has removed all objections based upon investigative privilege with the exception of the redaction of a CC'd email recipient on two emails." (Dkt. No. 84, at 1 (quoting Dkt. No. 81, at 5)).  Further, Defendants represented in their written filings that "CC'd email recipient" is "in law enforcement but is not a state actor and is not involved with any investigation under Act 636 or Act 174." (Dkt. No. 81, at 5).  Defendants warn that their "working relationship" "may be hindered if this person is unnecessarily identified in litigation unrelated to our work with them." (Dkt. No. 81, at 6).

On the morning of the hearing, Defendants produced for the first time the declaration of Walter Mahone that bears on these issues (Court's Exhibit 1 to the Jan. 23, 2026, hearing ("Court's Exhibit 1")).  Mahone, who is the sender of both emails at issue in OAG-004088 and OAG-004089, identifies himself as a Task Force Officer for a federal agency (Court's Exhibit 1, ¶¶ 2-3).  Mahone admits to being "deputized with federal authority and granted access to federal resources, intelligence, and jurisdiction." (Court's Exhibit 1, ¶ 4).  Mahone admits that, along with the individuals identified on the emails, he "copied a federal law enforcement officer on these emails to inform the officer that a petition had been filed in state court to enforce a subpoena." (Court's Exhibit 1, ¶ 7).  However, Mahone asserts:  "This intelligence-sharing of information related to Jones Eagle was not related to the Attorney General's investigation of Jones Eagle under Act 636. . . .  This federal law enforcement officer did not have any participation in the Office of the Attorney General's investigation of Jones Eagle under Act 636." (Court's Exhibit 1, ¶¶ 9, 11).  Further, Mahone claims:  "Revealing the identity of this officer will severely undermine the Office

of Attorney General's working intelligence relationship with the federal government and undermine the confidentiality of any ongoing federal investigations." (Court's Exhibit 1, ¶ 12).

Jones Eagle argues that "[p]rotecting constitutional rights outweighs speculative risk to Defendants' 'working relationship.'" (Dkt. No. 84, at 1). Jones Eagle maintains that the identity of the concealed recipient and the reasons for that person's participation in the correspondence are within the scope of civil discovery (*Id.* citing Fed. R. Civ. P. 26(b)(1)).

Defendants' discovery responses are deficient and internally inconsistent, raising questions of truthfulness and completeness. As one example, Jones Eagle explains that Defendants failed to disclose the concealed third recipient on these emails at issue when answering Interrogatory No. 4, which requested that Defendants "identify each person not employed by your Office but who otherwise participated in your Office's investigation of Jones Eagle pursuant to Act 636 and Act 174, including each person's name, address, telephone number, email address, job title, employer, and job duties." (Dkt. No. 81-2, at 3). In response, the Attorney General listed only Justin Smith, Billy Black, and Wes Ward of the Arkansas Department of Agriculture (*Id.*). The Attorney General's answer contains no objection, which Jones Eagle maintains should trigger waiver and defeat Defendants' ability to withhold the identity of the concealed third recipient on these emails. (Dkt. No. 84, at 5 (citing Fed. R. Civ. P. 33(b)(4))).

Moreover, Jones Eagle contends that all of this—the discovery responses and arguments by Defendants—are inconsistent with the Attorney General's response to Request for Production No. 1 (Dkt. No. 84, at 5 (citing Dkt. No. 81-2, at 14)). Request for Production No. 1 sought "each communication between your Office, and all persons acting in concert with your Office, and the Arkansas Department of Agriculture ('Department') and all persons acting in concert with the Department, in whatever form or medium, regarding, referring to, or relating to your Office's

investigation of Jones Eagle for potential violation of Act 636 or Act 174[.]" (Dkt. No. 81-2, at 14). The Attorney General objected "limited to the identification of a CC recipient[.]" (*Id.*). Jones Eagle argues that the objection asserted by the Attorney General in response to Request for Production No. 1 implies the concealed third recipient was acting in concert with Defendants in their Act 636 investigation.

Defendant Tim Griffin seeks to withhold the identity of the cc'd recipient from these emails based on a claim of investigative privilege (Dkt. No. 81, at 5). The investigatory privilege is "a limited, federal common law of privilege which protects criminal investigatory files." *Lykken v. Brady*, Case No. CIV. 07-4020-KES, 2008 WL 2077937, *5 (D.S.D. May 14, 2008) (citing *Stephens Produce, Inc., v. Nat'l Labor Relations Bd.*, 515 F.2d 1373, 1376 (8th Cir. 1975)). The privilege is "a very narrow one and need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it." *Stephens Produce*, 515 F.2d at 1376-77. "The privilege is predicated on the public interest in minimizing the disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *S.E.C. v. Shanahan*, Case No. 4:07-cv-270-JCH, 2009 WL 1955747, *1 (E.D. Mo. July 6, 2009).

Defendants must establish three prerequisites to assert the investigatory privilege: "(i) the head of the department having control over the information requested must assert the privilege; (ii) the official in question must do so based on actual personal consideration; and (iii) he or she must specify the information purportedly covered by the privilege, and accompany the request with an explanation as to why such information falls within the scope of the privilege." *Shanahan*, 2009 WL 1955747 at *2 (quoting *In re Adler, Coleman, Clearing Corp.*, Case No. 95-08203 JLG, 1999 WL 1747410, at *3 (S.D.N.Y. Dec. 8, 1999)). The investigative privilege "cannot be utilized

by executive agencies to indiscriminately hide all nominally 'investigatory materials' from public scrutiny." *Stephens Produce*, 515 F.2d at 137.

Jones Eagle contends that, even if Defendants meet their burden to establish that an investigatory privilege attaches, the Court is required to weigh whether Jones Eagle has a compelling need for the discovery (Dkt. No. 75, at 9). Jones Eagle maintains that all four factors under the balancing test weigh in favor of disclosure: (1) the evidence sought is highly relevant to Jones Eagle's claims; (2) the evidence is not available from any other source besides Defendants; (3) the Defendants are parties to the suit; and (4) any risk that disclosure would hinder internal discussions is minimal and outweighed by the other factors (*Id.*). *See In re Prempro Prods. Liab. Litig.*, Case No. MDL 403-cv-1507-WRW, 2006 WL 751299, at *1 (E.D. Ark. Mar. 20, 2006).

Griffin maintains in his briefing that "this individual is in law enforcement but is not a state actor and is not involved with any investigation under Act 636 or Act 174." (Dkt. No. 81, at 5). Further, Griffin asserts that "the identification of this actor is not relevant to Plaintiff's case, and conversely, Defendant Tim Griffin has a significant need for confidentiality of this person's identity," claiming "the Attorney General's working relationship with this actor may be hindered if this person is unnecessarily identified in this litigation unrelated to our work with them." (*Id.*, at 5–6).

Although Defendants requested *in camera* review before a ruling, Defendants provide little information to the Court, other than the name of this individual and the law enforcement agency for which he works, to aid in the Court's assessment or to aid in the Court's assessment of understanding what Defendants are representing in their discovery responses and filings about the role of this individual. Defendants concede the individual whose identity is withheld is a federal law enforcement officer (Court's Exhibit 1, ¶ 7).

Setting aside the issues raised by deficient and internally inconsistent discovery responses, in this litigation, having reviewed the record as a whole including all matters related to discovery, Defendants have adopted throughout the litigation a strategy that advocates for a narrow view of "investigation under Act 636 or Act 174." Neither this Court nor Jones Eagle is required to accept Defendants' view for purposes of discovery at this stage of the proceedings. Defendants do not "possess the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). "Litigation in general and discovery in particular, however, are not one sided." *Sentis Grp.*, 763 F.3d at 925. For these reasons, the Court and Jones Eagle are skeptical of Defendants' claims, and Jones Eagle attempts to employ the methods available under the Federal Rules of Civil Procedure and case law to test those claims through discovery.

At this time, the Court holds under advisement whether to disclose the identity of this individual. The Court will permit Jones Eagle to inquire of Mahone during his deposition about the declaration Mahone provided and about what Defendants are representing in their discovery responses and filings about the role of this individual whose name is redacted and Mahone's own role as a federal Task Force Officer in connection with this matter. The Court will be available to rule contemporaneously on any objections raised during that deposition, if the parties make that request in advance. The parties may supplement their filings with respect to this claim of investigatory privilege after such deposition.

## 2.    Attorney-Client Privilege

Defendants contend that, as to attorney-client privilege, Defendants only object based on attorney-client privilege to the scope of Requests for Production No. 24, 33, 34, and 35, claiming that these requests "lacked a temporal limit to the investigatory period and do not exclude attorney

11

work product and attorney client communications created after the instant suit was filed." (*Id.*, at 6). However, Defendants maintain that they have not withheld any materials under this privilege and instead seek only to preserve the objection by asserting it (*Id.*).

> The attorney-client privilege applies only if:
>
> (1) [T]he asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 958 (D. Minn. 2023) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977)).

The attorney-client privilege requires that at least one participant in the communication be an attorney or at least be acting for the purposes of providing legal advice from an attorney to a client. Further, the involvement of a lawyer does not trigger attorney-client privilege for all conversations. "The Eighth Circuit has held that including an attorney in a discussion or as an addressee of a communication does not make that communication privileged." *Harvey v. Great Circle*, Case No. 4:19-cv-902-NAB, 2020 WL 6544237, at *4 (E.D. Mo. Nov. 6, 2020) (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987)).

In evaluating whether an attorney-investigator is providing legal advice to trigger attorney-client privilege, courts have "emphasized the importance of the terms of engagement letter between the client and the investigator to determine the applicability of the privilege and whether legal advice was sought." *Thomas v. Marshall Pub. Sch.*, 690 F. Supp. 3d 941, 958 (D. Minn. 2023). "When the attorney is doing work that 'could have been performed just as readily by non-lawyers[,] then the client is not a client for purposes of the attorney-client privilege." *Thomas*, 690

F. Supp. 3d at 958 (quoting *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 603 (8th Cir.1977) (internal quotations omitted)).

"The party asserting the privilege bears the burden to provide a factual basis for its application." *Thomas*, 690 F. Supp. 3d at 958 (citing *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002); *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985)).

At this stage, the Court accepts Defendants' representations regarding its assertion of attorney-client privilege but, given the course of discovery thus far, cautions Defendants on the appropriate scope of the privilege, the factual basis required to assert the privilege appropriately, and the need to maintain a current privilege log that makes all parties aware of documents and information being withheld.

### 3. Work Product Doctrine

Based on their response to the motion to compel and arguments at the January 23, 2026, hearing, Defendants persist in asserting the work product doctrine to shield from production certain documents and portions of documents (Dkt. No. 81, at 6-8). Defendants insist, both before this Court and on appeal, that Jones Eagle lacks standing to bring this action. Jones Eagle argues that its standing is a subject which Defendants have voluntarily placed at issue in this action, opening the door to discovery and limiting the scope of privileges available to be asserted by Defendants to shield discovery. Jones Eagle argues that it faces prejudice caused by these improper privilege claims and has a substantial need for the withheld materials (Dkt. No. 84, at 10-11). To protect Jones Eagle against this potential prejudice, Jones Eagle requests that the Court conduct an *in camera* review of the discovery withheld under Defendants' work product assertions to decide the proper application and scope of the privilege and order production to the extent appropriate.

The Eighth Circuit has adopted a test for determining whether documents were prepared in anticipation of litigation and, thus, are subject to the work product privilege:

> Prudent parties anticipate litigation, and begin preparation prior to the. . . time suit is formally commenced.  Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  But the converse of this is that even though litigation is already a prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977) (emphasis added); *see also Foster v. Clausen Miller, P.C.*, 23 F. App'x 606, 608 (8th Cir. 2001) (same).

Further, work product may be either ordinary work product or opinion work product. According to the Eighth Circuit Court of Appeals:

> Ordinary work product includes raw factual information.  *See Gundacker v. Unisys Corp.,* 151 F.3d 842, 848 n.4 (8th Cir. 1998).  Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.  *See id.* at n.5.  Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.  *See* Fed.R.Civ.P. 26(b)(3).  In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.  *See In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977).

*Baker v. General Motors Corp.,* 209 F.3d 1051, 1054 (8th Cir. 2000).

To obtain these materials, a party must demonstrate a "substantial need of the materials to prepare its case" and that the party cannot "without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  Under such circumstances, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

However, even the nearly absolute immunity of attorney-opinion work product may be lost if a client places his attorney's opinions into direct issue. *See Minnesota Speciality Crops, Inc. v.*

14

*Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 677 (D. Minn. 2002) (citing *Hager v. Bluefield Reg'l Med. Ctr., Inc.*, 170 F.R.D. 70, 78 (D.D.C. 1997)).  The rationale for the implied waiver doctrine is as follows:

> Implied waiver deals with an abuse of a privilege . . . .  Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process. . . .  [A party asserting attorney-client privilege] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

*Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982)).  This rationale especially has merit where a party partially discloses privileged material in support of its claim but then refuses to produce the remainder of the privileged information, which could be necessary to counter the claim.  *Id.*  "Inherent in the recognition of a privilege for attorney work product is a judgment that society's interest in ferreting out the truth through litigation will not best be served by exposing a party's case to impeachment by documents reflecting the opinions or preliminary evaluations of its counsel[.]"  *Hager*, 170 F.R.D. 70, 77 (D.D.C. 1997) (quoting *In re Sealed Case*, 676 F.2d at 817 n. 95).  However, "when a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system," the privilege should give way.  *Hager*, 170 F.R.D. at 77 (quoting *In re Sealed Case*, 676 F.2d at 818).

In support of its claim of work product, Defendants assert:

> The earliest date on the privilege log is October 23, 2024.  Prior to this date, the Attorney General's Office began engaging in communication with Jones Eagle's counsel, Alex Jones, about drafting a confidentiality agreement to produce documents responsive to the Attorney General's subpoena.  The redacted portions of these communications represent the attorney's mental impressions and legal strategy concerning not only the drafting of the agreement but also the possibility of having to enforce the subpoena in state court, which it ultimately did.

(Dkt. No. 81, at 8).

Defendants further assert:

> In fact, the redacted portions of the communications that fall between November 4, 2024, and November 9, 2024 are discussing the logistics of filing the petition for contempt in state court after Jones Digital failed to respond to the subpoena. Although Plaintiff's lawsuit concerning this lawsuit was not filed until November 13, 2024, Defendants were anticipating and ultimately initiating litigation against Plaintiff for failing to respond to the subpoena before November 13, 2024.

(*Id.*).

Ultimately, Defendants argue:

> The Plaintiff cannot demonstrate any substantial need for these materials because they represent the mental impressions and legal strategy of the attorneys, and further, these communications do not relate [to] any underlying investigation under Act 636 or Act 174.

(*Id.*).

Again, Defendants have adopted throughout the litigation a strategy that advocates for a narrow view of "investigation under Act 636 or Act 174," relying on this to challenge, among other things in the litigation, Jones Eagle's standing to maintain this suit. Defendants do not "possess the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Sentis Grp., Inc.*, 763 F.3d at 925. As Jones Eagle asserts:

> Defendants say, "The Plaintiff cannot demonstrate any substantial need for these materials because they represent the mental impressions and legal strategy of the attorneys, and further, these communications do not relate any underlying investigation under Act 636 or Act 174." That is wrong. In the paragraph above, they acknowledge the "work product" invocations are asserted about communications "discussing the logistics of filing the petition for contempt in state court after Jones Digital failed to respond to the subpoena." These communications plainly relate to the Act 636 investigation.

(Dkt. No. 84, at 10).

The Court has conducted an *in-camera* review of the unredacted documents to assess those portions withheld from production pursuant to a claim of attorney-client privilege and work product doctrine as against Jones Eagle's substantial need for the information which the Court

finds and the possibility of implied waiver by Defendants.  The Court finds that Defendants have waived the attorney-client privilege as to these documents given the issues involved in this litigation, including but not limited to the issue of standing.  *Compare Jones Eagle LLC v. Ward, et al*, Case No. 25-1047 (Def. Brief, at 27) (arguing that Jones Eagle does not have standing in this case because "it is speculative, at best, whether Jones Eagle would be prosecuted upon production of the documents the subpoena demands") *with* (Dkt. No. 81, at 8) ("the redacted portions of the communications . . . are discussing the logistics of filing the petition for contempt in state court after Jones Digital failed to respond to the subpoena . . . Defendants were anticipating and ultimately initiating litigation against Plaintiff for failing to respond to the subpoena before November 13, 2024").  The Court does not enter this Order lightly, understanding the nature of the communications at issue.  Having engaged in this analysis, the Court orders the unredacted production of the following:

> OAG-ICR-004097
> OAG-ICR-004098
> OAG-ICR-004099
> OAG-ICR-004100
> OAG-ICR-004184
> OAG-ICR-004185
> OAG-ICR-004186
> OAG-ICR-004192
> OAG-ICR-004202
> OAG-ICR-004203
> OAG-ICR-004210
> OAG-ICR-004220
> OAG-ICR-004222
> OAG-ICR-004223
> OAG-ICR-004234
> OAG-ICR-004235
> OAG-ICR-004236
> OAG-ICR-004237
> OAG-ICR-004238
> OAG-ICR-004239
> OAG-ICR-004240
> OAG-ICR-004241

The Court directs Jones Eagle and Defendants to confer about whether any level of protection of these unredacted documents is warranted pursuant to the parties' Protective Order. Defendants are required to produce the unredacted documents by 5:00 p.m. Tuesday, February 4, 2026, or prior to any scheduled deposition of any individual who authored or is copied on an unredacted document, whichever is earlier.

### B.    Interrogatory Responses

Attached to Jones Eagle's motion to compel are Defendants' third supplemental objections and responses to the first set of interrogatories and requests for production (Dkt. No. 81-2).  Jones Eagle seeks to require Defendants to respond by answering the interrogatories propounded by Jones Eagle with responsive information, not non-responsive or non-answer responses.  The Court acknowledges that Defendants, at the hearing, wanted another opportunity to cure the defects in their discovery responses.  Having had months to do that prior to the hearing, and having withdrawn objections, finally responded, or supplemented multiple times incomplete responses on Defendants own (*see* Dkt. Nos. 74-1 to 74-11; 81), it is time for the Court to rule.  As to many of Defendants' responses to discovery requests, the Court again observes that Defendants' discovery responses are deficient and internally inconsistent, raising questions of truthfulness and completeness.

The Court grants Jones Eagle's motion to compel Defendants to respond and rules as follows.

### 1.    Interrogatory Nos. 2, 3, And 4

Jones Eagle propounded the following discovery requests:

INTERROGATORY NO. 2:   Please identify each person involved in all investigations of potential violations of Act 636 and Act 174 conducted by the Arkansas Attorney General's Office ("Attorney General"; "Office"; "your Office"), and all persons acting in concert with your Office, including each person's

name, address, telephone number, email address, job title, employer, and job duties
up to the date of service of your answers to these interrogatories.

(Dkt. No. 81-2, at 2).

> INTERROGATORY NO. 3:  Please identify each person employed by your Office,
> and all persons acting in concern with your Office, involved in conducting all
> investigations of Jones Eagle undertaken by your Office, pursuant to Act 636 and
> Act 174, including each person's name, address, telephone number, email address,
> job title, employer, and job duties.

(*Id.*, at 3).

> INTERROGATORY NO. 4:  Please identify each person not employed by your
> Office but who otherwise participated in your Office's investigation of Jones Eagle
> pursuant to Act 636 and Act 174, including each person's name, address, telephone
> number, email address, job title, employer, and job duties.

(*Id.*).

In a meet-and-confer letter, in response to these Interrogatories No. 2, 3, and 4, Defendants

stated:

> The Attorney General's Office provided all persons known to be "involved in all
> investigations of potential violations of Act 636 and Act 174."  You did not define
> "involved" and therefore we produced what we thought was responsive based on
> our client's natural understanding of that word and its meaning within the context
> of the request.  We produced identification of persons or entities involved in
> completed investigations. To the extent that you are now requesting a list of persons
> "investigated" under Act 636 that are still ongoing, we assert investigatory and
> deliberative process privilege objections to providing such information.
>
> We would note that you go on to request "person[s] not employed by []our office"
> who "participated in []our Office's investigation of Jones Eagle." *See* Interrogatory
> No. 4.  In response, we provided persons outside of our office as requested.  You
> did not define "participate" so we interpreted that based on our client's natural
> understanding of that word.  We believe our responses are accurate based on our
> client's present knowledge.  We reserve the right to supplement this as necessary.

(Dkt. No. 74-1, at 4–5).

Defendants do not include in their third supplemental response to Interrogatory No. 2 a list

of all individuals identified on the privilege logs produced in this case (*see* Court's Exhibit 2).

Further, Defendants do not include in their third supplemental response to this Interrogatory No. 2 Justin Smith, Billy Black, Wes Ward (*see* Dkt. No. 81-2, at 3); Representative Jeremiah Moore (*Id.*, at 7); Cynthia Edwards, Corey Seats (*Id.*, at 8); Representative Bart Schultz, Matt Reynolds, or Ron Burnett (*Id.*, at 10), among others identified elsewhere in Defendants' third supplemental discovery responses. The Court also has examined Defendants' responses to Interrogatories No. 3 and 4.

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory Nos. 2, 3, or 4 on any basis (Dkt. No. 81). To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately. To the extent Defendants persist in the position that the phrase "involved in all investigations of potential violations of Act 636 and Act 174" or "participated in" may somehow be construed to omit the individuals Defendants themselves identify as requesting the investigations or individuals Defendants met with regarding investigations under Act 636, the Court overrules Defendants' position. To the extent Defendants persist in their position that they need only disclose "completed investigations," the Court overrules Defendants' position. To the extent Defendants persist in the position that Defendants need not disclose "ongoing investigations under Act 636," the Court overrules Defendants' position. The Court directs Defendants to amend their response to Interrogatory Nos. 2, 3, and 4 in compliance with this Order.

### 2.    Interrogatory No. 5

Jones Eagle propounded the following discovery request:

<u>INTERROGATORY NO. 5</u>:  Please identify each legal person, to include each natural person, legal entity, and any other group of such persons, whom your Office has investigated for potential violations of Act 636 and Act 174, since January 1,

2022, and state the name, address, telephone number, and email address, of each person or representative of such person, with whom your Office has communicated.

(Dkt. No. 81-2, at 3-4).

In response to a meet-and-confer letter about Defendants' response, Defendants stated:

> We provided answers based on "investigations" that have been publicly disclosed as occurring. However, under investigatory and deliberative process privileges, we decline to assert whether other entities have been "investigated" in which no determination has been made by our Office regarding an entity's compliance with Act 636. Considering that you did not define "investigated," we provided answers that were responsive based on our client's natural understanding of the word within the context of this case. To the extent that counsel is requesting a list of ongoing investigations under Act 636, we stand by our investigatory, deliberative process, and attorney work product privileges.

(Dkt. No. 74-1, at 5)

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to this Interrogatory 5 on any basis (Dkt. No. 81). To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately. To the extent Defendants persist in the position that only "'investigations' that have been publicly disclosed as occurring" need be included in Defendants' response, the Court overrules Defendants' position. To the extent Defendants persist in the position that Defendants need not disclose other entities as having been "'investigated' in which no determination has been made by [Defendants'] Office regarding an entity's compliance with Act 636," the Court overrules Defendants' position. To the extent Defendants persist in the position that Defendants need not disclose "ongoing investigations under Act 636," the Court overrules Defendants' position. The Court directs Defendants to amend their response to Interrogatory No. 5 in compliance with this Order.

### 3.    Interrogatory No. 6

Jones Eagle requests the following:

<u>INTERROGATORY NO. 6</u>:  Please state your knowledge and belief of the race, national origin, and citizenship status of each person you identified in your answer to Interrogatory No. 5, and state in detail the factual basis for that knowledge and belief.

(Dkt. No. 81-2, at 4).

In a meet-and-confer letter regarding this request, Defendants stated:

As stated above, we stand by our investigatory privileges asserted. We properly responded that the Attorney General lacks sufficient knowledge to respond as to the race and national origin of those who possessed ownership interests because investigations under Act 636 are limited to inquiries related to citizenship status and residency. Moreover, subject to these privileges, we provided complete answers as to the citizenship status of investigated entities under Act 636.

(Dkt. No. 74-1, at 5).

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory No. 6 on any basis (Dkt. No. 81).  To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately.  In their third supplemental response to Interrogatory No. 6, it is not responsive for Defendants to state:  "These investigations were not based on any 'belief' about these entities." (Dkt. No. 81-2, at 5).  The Court strikes the sentence as non-responsive.  In their written response to the motion to compel, Defendants state:  "Defendant did not have 'information or belief' as to the national origin or race of these entities because no such information was sought or collected as to these entities." (Dkt. No. 81, at 12).  Inexplicably that statement does not appear in the written response to Interrogatory No. 6.  The Court directs Defendants to amend their response to Interrogatory No. 6, to respond fully to Interrogatory No. 6 including but not limited to the inquiry regarding race and national

origin of each person identified in the answer to Interrogatory No. 5 and the factual basis for that knowledge and belief, and to do so in compliance with this Order.

### 4.    Interrogatory No. 9

Defendants address this matter in their response to the motion to compel (Dkt. No. 81, at 13-14). The Court observes that Defendants persist in failing to answer "why" the Attorney General, if he was the ultimate decision maker as Defendants represent, decided to investigate Jones Eagle. Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory No. 9 on any basis (Dkt. No. 81). To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately. The Court directs Defendants to amend their response to Interrogatory No. 9 in compliance with this Order.

### 5.    Interrogatory No. 11

Jones Eagle requested in discovery:

INTERROGATORY NO. 11: Please identify each person with whom your Office has met in-person about its investigation into Jones Eagle under Act 636 and Act 174 and state the approximate date and time of each such in-person meeting.

(Dkt. No. 81-2, at 8).

In a meet-and-confer letter, Defendants stated:

As stated above, we stand by our relevance objection and believe it was raised with sufficient specificity. The sufficiency of an objection is defined by its specificity, not whether we spelled out the "operative standard" of Rule 26(b) in the verbatim style counsel would have preferred. The identification of internal meetings and even external meetings regarding Jones Eagle would not produce any more discoverable information than was already produced in response to Interrogatory Nos. 2 and 4 (identification of persons involved with the Jones Eagle investigation), and therefore it is duplicative and not reasonably calculated to lead to discoverable evidence.

You seem to suggest that your question is meant to "elicit information about third parties who have met with the Attorney General's Office about these

investigations."  We have supplementarily produced information regarding in-person meetings our Office has had with the Department of Agriculture. Beyond that, we do not presently have information responsive to this request.  To the extent that you would likely to identify the third parties involved in this alleged meeting, we may be able to produce more responsive information as it can be difficult to search for historical in-person meetings squarely based on the topic discussed.  We are not trying to hide the ball on this; we have genuinely put forth what we have.

(Dkt. No. 74-1, at 5–6).

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory No. 11 on any basis (Dkt. No. 81).  To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately.  To the extent Defendants persist in a relevance objection, a duplicative objection, or an objection that this request is not reasonably calculated to lead to discoverable evidence, the Court overrules Defendants' positions and directs Defendants to respond to Interrogatory No. 11.  The Court directs Defendants to amend their response to Interrogatory No. 11 in compliance with this Order.

### 6.    Interrogatory No. 12

Jones Eagle propounded this discovery request:

INTERROGATORY NO. 12:  Please state the date and number of complaints your Office has received for potential violations of Act 636 and/or Act 174, the identity of each subject of each complaint, and identify whether you have investigated or intend to investigate the subject of each such complaint.

(Dkt. No. 81-2, at 8).

In a meet-and-confer regarding this response, Defendants stated:  "We stand by our assertion of investigatory and deliberative process privilege, as outlined in the beginning of this letter." (Dkt. No. 74-1, at 6).  Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory Nos. 2, 3, or 4 on any basis (Dkt. No. 81).  To the extent the Court's

understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately.

In their third supplemental response to Interrogatory No. 12, Defendants state that the office has received no complaints for potential violations of Act 174 and that the office has "received three official letters from the Department of Agriculture requesting an investigation under Act 636." (Dkt. No. 82-1, at 8). The response to Interrogatory No. 12 also discloses a "phone call from Representative Jeremiah Moore to investigate Jones Digital, LLC's compliance with Act 636." (*Id.*, at 9).

However, later, in response to Interrogatory No. 14, Defendants state: "Representative Bart Schultz notified the Attorney General's Office of a suspicious transaction in Sharp County that may implicate Act 636." (*Id.*, at 10). In response to that inquiry, Defendants concede the "Attorney General's Office drafted and sent a subpoena to Sharp County Title." (*Id.*). It is unclear to the Court why that information is not responsive to Interrogatory No. 12 and was not included in response to Interrogatory No. 12. Not having objected to Interrogatory No. 12, Defendants may not now attempt to limit the scope of their response or to withhold responsive information. Failing to include what appears to be relevant information in response to an interrogatory raises the concern that Defendants are withholding more. The Court directs Defendants to amend their response to Interrogatory No. 12 in compliance with this Order.

### 7.    Interrogatory No. 13

The Court understands that Defendants in their third supplemental responses have disclosed the responsive information in their possession. In Jones Eagle's reply in support of its motion to compel (Dkt. No. 84, at 5-10), Jones Eagle explains the circumstances of the events leading Defendants to supplement their response to Interrogatory No. 13 and the deficiencies in

Defendants' initial response to Interrogatory No. 13 and the accompanying document production. Suffice to say, the Court overrules Defendants' narrow view and constrained reading of Interrogatory No. 13, as stated in Defendants' response to the meet-and-confer regarding Interrogatory No. 13 (*see* Dkt. No. 74-1, at 6). To the extent necessary, the Court directs Defendants to amend their response to Interrogatory No. 13 in compliance with this Order.

### 8.    Interrogatory No. 14

Jones Eagle requested the following:

INTERROGATORY NO. 14:    Please state all reasons why Deputy Attorney General Benton issued the subpoena *duces tecum* to Sharp County Title, Inc. on February 28, 2024, which was entered into evidence as Plaintiff's Exhibit 45 at the preliminary injunction hearing held December 4, 2024.

(Dkt. No. 81-2, at 10).

In response to a meet-and-confer regarding this request, Defendants stated:

We stand by our assertion of privileges, as outlined in the beginning of this letter. The fact that Alexandra Benton did not know of a connection to Jones Eagle prior to issuing the subpoena does not nullify the subpoena[']s connection to the enforcement of Act 636 against other entities, and the application of investigatory and deliberative process privileges. Moreover, you are asking for the mental impressions of Alexandra Benton in issuing the subpoena in order to investigate under Act 636, and we would maintain that such information is subject to attorney work product, investigatory, and deliberative process privilege. Subject to and without waiving those objections, we provided a responsive answer.

(Dkt. No. 74-1, at 6).

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory No. 14 on any basis (Dkt. No. 81). To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately. To the extent necessary, the Court directs Defendants to amend their response to Interrogatory No. 14 in compliance with this Order.

### 9.    Interrogatory Nos. 15–18

Based upon Defendants' response to the motion to compel and the privilege logs produced, the Court understands Defendants are no longer withholding information responsive to Interrogatory Nos. 14, 16, 17, or 18 on any basis (Dkt. No. 81).  To the extent the Court's understanding is incorrect, Defendants are directed to notify Jones Eagle and the Court immediately.

### C.    Obligation To Preserve And Produce ESI

Defendants' counsel admits in a written filing that Defendants have not produced responsive materials which Jones Eagle had to obtain *via* multiple third-party subpoenas (Dkt. No. 81, at 9 ("Alexandra Benton has confirmed that all text messages on her work phone only remain for one year, per the settings in her phone.")).  The Court, like Jones Eagle, has concerns based on this admission.

It does not appear that the parties dispute the following, most of which is set forth by Jones Eagle in its reply (Dkt. No. 84, at 5-7).  At first, the Attorney General failed to divulge the involvement of Rep. Bart Schulz, Matt Reynolds, and Ron Burnett in the subpoena issued to Sharp County Title, Inc. (*see* Dkt. No. 74-4, at 11-13 (Attorney General's Answers to Interrogatories Nos. 13, 14, 15, and 16)).  The Attorney General did not object to Interrogatories Nos. 13, 15, or 16.  The Attorney General did divulge Rep. Bart Schulz's involvement in his first supplemental answers (*see* Dkt. No. 77-2, at 14).  However, the Attorney General omitted Matt Reynolds and Ron Burnett (*Id.*).  Only after Jones Eagle filed its motion to compel did Defendants divulge Ron Burnett's involvement (*see* Dkt. No. 81-2, at 11).

Further, in a written filing to the Court, Defendants assert, "Alexandra Benton has confirmed that all text messages on her work phone only remain for one year, per the settings in

her phone." (Dkt. No. 81, at 9).  Neither Defendants nor Benton have produced an affidavit or declaration to confirm that.  Even if that representation is true, it raises more concerns for the Court about whether a litigation hold was issued by Defendants' counsel and whether Defendants and all those bound by the Federal Rules of Civil Procedure are abiding by that request and the requirements of the Federal Rules of Civil Procedure with respect to discovery obligations.

The timing presents a problem for Benton.  Benton is a trained lawyer.  This action commenced November 13, 2024.  The text message communications between Benton and Burnett were exchanged from February 28, 2024, to March 22, 2024.  Based on Defendants' asserted timeline, the text message communications were available for over three months after this action commenced.

On February 27, 2025, within one year of the first messages between Benton and Burnett, this Court held a status conference at which Jones Eagle requested issuance of an initial scheduling order to allow discovery to proceed (Dkt. No. 56).  The Court issued its initial scheduling order on February 28, 2025 (Dkt. No. 57).  Pursuant to that Order, the parties conferred and submitted a Joint Rule 26(f) Report on March 21, 2025, which was within one year of the last disclosed messages between Benton and Burnett (Dkt. No. 59).

In the Joint Rule 26(f) Report, Jones Eagle expressly stated it "will seek discovery regarding compliance with the Court's temporary restraining order and preliminary injunction order in effect in this action by persons so bound under Fed. R. Civ. P. 65(d)(2)." (Dkt. No. 59, at 2).  It appears that no party disputes that Defendants—and other persons subject to Federal Rule of Civil Procedure 65(d)(2)—have been on notice of the need for this discovery.  Rule 37(e) requires that electronically stored information be preserved.  As the Rule 26(f) Report provided, "[t]he Parties anticipate discovery of electronic or computer-based media." (*Id.*, at 2).  "The Parties

assert they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction." (*Id.*, at 3).

The Court is keenly interested in whether Defendants' counsel issued a litigation hold. "Usually such notice is provided when suit has been filed, 'providing the party responsible for destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 189 F.R.D. 76, 81 (S.D.N.Y. 1999) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y.1991)).  However, a party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation.  *E\*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating that rule requires preservation of evidence when litigation is reasonably foreseeable).  "A variety of events may alert a party to the prospect of litigation."  Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment.  "The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence."  *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017).

The Court acknowledges that, even when litigation is reasonably foreseeable, a party is under no obligation "to keep every shred of paper, every e-mail or electronic document and every backup tape."  *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Lit.*, 299 F.R.D. 502, 517-518 (S.D. W. Va. 2014) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (stating the scope of information that should be preserved often is uncertain).  The "duty to preserve evidence extends to those [persons] likely to have relevant information – the key players in the case, and applies to unique, relevant evidence

that might be useful to the adversary." *Ethicon*, 299 F.R.D. at 517 (citation and internal quotation marks omitted).

Benton is the type of person likely to have relevant information in this case. By Defendants' own admission, she along with Walter Mahone signed Defendants' responses to discovery requests (Dkt. No. 81, at 10). Defendants were required, among other responsibilities, to take reasonable steps to preserve Benton's text messages.

Rule 34 requires the production of any document, including, "data or data compilations— stored in any medium from which information can be obtained. . . directly." Fed. R. Civ. P. 34(a)(1)(A). It is well established that text messages "fit comfortably within the scope of materials that a party may request under Rule 34." *Flagg v. City of Detroit*, 252 F.R.D. 346, 352-53 (E.D. Mich. 2008); *see Lalumiere v. Willow Springs Care, Inc.*, Case No. 16-cv-3133, 2017 WL 6943148, *2 (E.D. Wa. Sept. 18, 2017) (concluding text messages may be requested under Rule 34); *see also* Fed. R. Civ. P. 34, advisory committee's note to 2006 amendments (explaining that Rule 34 plainly encompasses electronic communications and copies of such communications preserved in electronic form).

Rule 37 requires the party from whom the information is sought to ensure they are taking reasonable steps to preserve evidence. Fed. R. Civ. P. 37(e). The Rule does not require that the requesting party issue a document preservation letter identifying all types of ESI that it might seek in the future. Instead, that burden rests with the preserving party. *Id.* Further, the principles of the "standard reasonableness framework" require a party to "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 108 (E.D. Va. 2018) (citation and internal quotation marks omitted); *see DR Distributors, LLC, v. 21 Century*

*Smoking, Inc.*, 513 F.Supp.3d 839, 929–33 (N.D. Ill. 2021) (explaining the duties of counsel and litigants to implement effective litigation holds in order to preserve ESI). "Among other things, critically, an adequate hold notice must include a warning to disable autodelete functions." *DR Distributors, LLC*, 513 F.Supp.3d at 931.

Based on text messages that non-parties have produced in this litigation, the type of persons likely to have relevant information in this case used their cell phones—perhaps even personal cell phones—to conduct the public's business. *See Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) (concluding that production of text messages from third parties indicated that parties' "text messages were likely to contain information relevant to this litigation."). Defendants have produced few, if any text messages in discovery. As Jones Eagle asserts, "[t]he near absence of production of other text message communications is unexplained." (Dkt. No. 84, at 7).

It is not Jones Eagle's responsibility to question why Defendants did not produce any text messages. This is because Defendants *are the only ones* who would know the extent that they used their cell phones—perhaps even personal cell phones—to conduct the public's business at the time they knew or should have reasonably known that litigation was not just possible, but likely, in this case.

Furthermore, Defendants like all parties to litigation do not get to select what evidence they want to produce or from what sources. They must produce all responsive documents or seek relief from the Court. *See* Fed. R. Civ. P. 26(c) (outlining process for obtaining protective order). In fact, in cases that predate Rule 37(e) in its current form, courts had concluded that the failure to preserve some types of ESI while destroying others is a reasonable basis to infer that the destroying

party acted with bad faith.  *See Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004); *Zublake v. UBS Warburg, LLC*, 220 F.R.D. 212, 219–22 (S.D.N.Y. 2003).

Defendants' counsel admits only in a filing that Defendants failed to preserve at least some responsive and discoverable electronically stored information.  Again, this type of admission raises concerns about Defendants' conduct during discovery.  Further, this type of admission, depending on the factual circumstances surrounding the failure, may lead to sanctions and further relief being sought.

To address these issues at this stage, the Court preliminarily directs counsel for Defendants to confirm in a written filing with the Court that they have issued a litigation hold.  *See Roytlender v. D. Malek Realty, LLC*, Case No. 21-cv-0052-MKB-JMV 2022 WL 5245584, at *10 (E.D.N.Y. Oct. 6, 2022) (compelling production of information regarding the issuance and nature of a litigation hold).  Counsel must state the date the litigation hold or litigation holds were issued.  The Court requires this disclosure to include the names, job titles, and dates of employment of the recipients of the hold notices.

Further, the Court directs Defendants to confirm in a written filing with the Court the dates of preserved ESI, including but not limited to the sources of ESI preserved, when each source was preserved, when each ESI source was used, what each source was used for, and the general types of information contained in each source.

If any ESI has been destroyed, which appears to have occurred with Benton, the individual such as Benton or individuals with personal knowledge must file an affidavit with the Court indicating whether a litigation hold was received, what occurred with the ESI, what efforts have been undertaken to restore the ESI, and what efforts have been undertaken to search other available

ESI in the custody or control of the individual.  If the ESI cannot be restored or replaced, the Court may then determine what, if any, sanction is warranted.

Defendants shall comply with this Order on or before Thursday, February 12, 2026. However, for Benton, these steps must be taken on or before Thursday, February 12, 2026, or prior to any scheduled deposition of Benton in this matter, whichever is earlier.

### III.    Conclusion

For these reasons, the Court grants Jones Eagle's motion to compel production of subpoena responses (Dkt. No. 61).  The Court grants, in part, denies as moot, in part, and holds under advisement, in part, Jones Eagle's motion to compel (Dkt. No. 74).

It is so ordered this 30th day of January, 2026.

_Kristine G. Baker_
Kristine G. Baker
Chief United States District Judge