IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JONES EAGLE, LLC**                                                                                                  **PLAINTIFF**

**VS.**                                           **NO. 4:24-cv-990-KGB**

**WES WARD, et al.**                                                                                                **DEFENDANT**

### JONES EAGLE'S RESPONSE TO THE ATTORNEY GENERAL'S MOTION FOR CLARIFICATION AND RECONSIDERATION

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a person directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

**WILLFUL VIOLATION OF THE COURT'S ORDER BY THE ATTORNEY GENERAL**

On January 30, 2026, the Court granted plaintiff Jones Eagle, LLC's ("Jones Eagle") motion to compel discovery production. Dkt. No. 91, at 17. The Court compelled defendant Attorney General Tim Griffin ("the Attorney General") to produce unredacted documents which he had initially produced only in redacted form. *Id.* The Court ordered the Attorney General to make production by "February 4, 2026, or prior to any scheduled deposition of any individual who authored or is copied on an unredacted document, whichever is earlier." *Id.* at 18.

The Attorney General has failed to produce the documents. The time to do so has passed. There has been no stay of the Court's order. The Attorney General has not sought one. Nor has the Attorney General sought a protective order under Rule 26(c). The order remains in effect. The Attorney General has failed to comply with it.

The Attorney General's failure to comply with the Court's order likely warrants sanctions under Rule 37(b)(2)(A). Those require "(1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party." *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009). In appropriate cases, the Court may issue an order:

> (i) directing matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

In its order compelling the production, the Court directed the parties "to confer about whether any level of protection of these unredacted documents is warranted pursuant to the parties' Protective Order." Dkt. No. 91 at 18. During those conferrals, the Attorney General initially stated he "would like to produce the documents by 5:00 p.m." on Tuesday, February 3, 2026.

But the Attorney General didn't produce the documents. Instead, the Attorney General requested that Jones Eagle agree, sight unseen, to the designation of the documents as Highly Confidential-Attorney's Eyes Only. Jones Eagle cannot agree to a confidentiality designation of materials it has never reviewed. Jones Eagle explained it was "not objecting to any designations [the Attorney General] might make under the protective order. However, we can't agree that any protective designation applies to materials we haven't reviewed." Jones Eagle "reserve[d] the right to challenge any designation made as is authorized by the protective order."

The proper course at that point would have been for the Attorney General to make production under an asserted designation under the parties' agreed protective order. Dkt. No. 31.

Then, Jones Eagle could review each document and intelligently assess each designation. The parties could confer about the designations. If they disagreed, Jones Eagle could challenge any designation as provided by the protective order. *Id.* at 5-6.

But the Attorney General did not take that course. The Attorney General withheld the documents, violating the Court's order. This was "a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." *Coral Group, Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 436 (W.D. Mo. 2012) (quoting *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991)). Through willful conduct, the Attorney General impairs Jones Eagle's ability to develop evidence to support its claims and rebut the Attorney General's defenses. *Coral Group*, 286 F.R.D. at 436-437.

Rather than comply with the Court's order, the Attorney General filed the instant motion seeking "clarification" or "reconsideration." Dkt. No. 92. Filing that motion did not toll the Attorney General's obligations to comply with this Court's Order. The authority on this point cuts uniformly against the Attorney General's position.[1]

---

[1] *E.g.*, *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1269 (10th Cir. 2022) ("If the Kellogg farmers had questioned the validity of the district court's order for a discovery conference, they could have sought reconsideration or a writ; but they could not violate the order.") (quotations and citations omitted); *United States v. M/Y Amadea*, 2025 WL 754124 *12 (S.D.N.Y. Mar. 10, 2025) ("Claimants never made any effort to comply with that Order. Instead, they filed a motion for reconsideration on January 16, the day before the deposition was to take place. But 'the filing of a motion to reconsider did not act as a stay of an order.'") (citation omitted); *Tarvisium Holdings, LLC v. Dukat, LLC*, 2020 WL 12688135 (W.D. Mo. Feb. 7, 2020) ("The January 10th Order mandated Defendants produce the responsive discovery by January 17, 2020. Filing the motion for reconsideration did not toll compliance with this order."); *Fairbaugh v. Life Ins. Co. of North America*, 872 F.Supp.2d 174, 181 (D. Conn. 2012) (noting "the proper course for Defendant was to seek a stay"); *United States v. Ottman*, 2008 WL 4371975, n.1 (M.D. Ga. Sept. 22, 2008) ("The filing of the Motion for Reconsideration does not act to stay the Government's obligation to release the documents as previously ordered by the Court."); *In re Heritage Bond Litigation*, 223 F.R.D. 527, 532 (C.D. Cal. 2004) (noting that a stay entered *after* production was required did not justify failure to timely comply with the Court's order to produce documents); *Creative Solutions Group, Inc. v. Pentzer Corp.*, 199 F.R.D. 443, 444 (D. Mass. 2001) ("the defendant was under an obligation

3

In *Creative Solutions Group*, the Massachusetts court explained in detail what would have been the proper approach—an approach which the Attorney General did not follow. "The plain fact is that merely moving for a stay does not operate to effectuate a stay unless and until the stay is granted."199 F.R.D. at 444. "*At the very least, defendant was obligated to seek a stay of its obligation to comply with the Order compelling discovery*; its obligation to comply is not excused by the filing of the motions for reconsideration of the order refusing to compel and stay proceedings. *A separate motion for stay or for a protective order should have been filed.*" Id. (emphasis added).

There is no stay. The Attorney General has not requested one. The Court's order stands. The Attorney General has willfully violated it.

## ACUTE PREJUDICE TO JONES EAGLE

Time is short. Discovery closes this month. Trial begins in May. Jones Eagle has diligently sought these materials since last July. The Court ordered the Attorney General to produce them. But the Attorney General has not complied with the Court's order, and the deadline has passed.

The Attorney General's failure to comply with the Court's order is causing acute and escalating prejudice to Jones Eagle. The Attorney General's failure to comply with the Court's order blocks Jones Eagle from probative discovery. The Court has already reviewed the withheld documents *in camera*. From that review, the Court concluded Defendants "have waived the attorney-client privilege as to these documents given the issues involved in this litigation, including but not limited to the issue of standing." Dkt. No. 91 at 17. Yet despite the Court's order, the Attorney General continues to block the redacted information from Jones Eagle.

---

to obey the Order unless it *sought and obtained* a stay of that specific Order. In this case, no stay of the Order was ever sought[.]") (emphasis in original).

Here, Jones Eagle's prejudice should not be viewed in isolation. Defendants failed to preserve discoverable materials despite their obligations under Rule 37(e) and the statements in the parties' Joint Rule 26(f) Report. Jones Eagle still has only limited understanding of the scale of its prejudice. Jones Eagle is trying hard to prepare its case for trial and maintain the scheduling order. Yet in the wake of the Court's order compelling discovery production, the Attorney General has chosen to compound Jones Eagle's prejudice by failing to comply with the very first of his obligations under that order. Dkt. No. 91.

While imperfect, the Federal Rules of Civil Procedure aspire to offer a level playing field to parties in litigation. "They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. From the lowliest litigant to the sitting President of the United States, each party must obey these rules and lawful orders issued by courts entrusted to resolve cases before them. *Jones v. Clinton*, 36 F.Supp.2d 1118, 1126 (E.D. Ark. 1999); *United States v. Nixon*, 418 U.S. 683 (1974). So too must the Attorney General.

Jones Eagle is a small business operating in a new and little-understood industry. Conversely, Defendants wield state power. This litigation may be the only way for Jones Eagle to protect itself from foreseeable and targeted deprivations of its constitutional rights by state actors. Absent speedy and substantial relief, Jones Eagle risks extreme prejudice caused by the Attorney General's failure to comply with this Court's order.

## THE ATTORNEY GENERAL'S NEW ARGUMENTS ARE MERITLESS

The Attorney General claims this Court's conclusions "are based on erroneous application of the controlling law and also predicated on clearly erroneous facts." Dkt. No. 93 at 1 (citing

5

*Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (explanatory parentheticals omitted). The Attorney General is wrong.

The Court's well-reasoned order compelling production is premised on direct *in camera* review of the documents at issue and thorough examination of applicable authority. After *in camera* review, the Court held "Defendants have waived the attorney-client privilege as to these documents given the issues involved in this litigation, including but not limited to the issue of standing." Dkt. No. 91 at 91. The Court found "implied waiver," which affords relief to the non-disclosing party where "a party partially discloses privileged material in support of its claim but then refuses to produce the remainder of the privileged information, which could be necessary to counter the claim." *Id.* at 15 (citing *Ideal Elec. Soc. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982)).

Here, the Attorney General produced the surrounding communications about Defendants' Act 636 investigation targeting Jones Eagle. Presumably, the redacted materials concern the same subject-matter. But the Attorney General made only a partial disclosure; through extensive redactions, the Attorney General has withheld probative materials about Defendants' Act 636 investigation.

Perhaps those redactions would be suitable in a different case. But here, the Attorney General has challenged Jones Eagle's standing to challenge Act 636. As the Court found, the Attorney General has placed these matters directly at issue in the litigation both in briefing on appeal and before this Court. Dkt. No. 91 at 17. Therefore, this inquiry falls squarely within the scope of proportional discovery. Fed. R. Civ. P. 26(b)(1).

Challenging the Court's rulings—but without seeking a stay from his legal duty to comply with the Court's order—the Attorney General attempts to confine a district court opinion on

discovery and privilege narrowly to that case's unique circumstances. *Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 677 (D. Minn. 2022). The Attorney General suggests *Minnesota Specialty Crops* was only about "expert witnesses." But the Attorney General ignores the opinion's holding that "any work product privilege" "has been waived," as having been directly related to "*counsel's legal opinions* as to the propriety of employing various advertisements, given the Plaintiff's trademark claims." *Id.* at 679 (emphasis added). That fundamental point applies here, too: a party cannot advance a particular claim or defense while claiming a privilege to refuse producing information which might undermine that defense. In the right case, that information triggering waiver may be "counsel's legal opinions," notwithstanding whether the work-product was classified as "ordinary" or "opinion." While Jones Eagle still lacks the benefit of having reviewed the documents at issue, these communications may be "ordinary work product" to the extent they establish or support the factual predicates for Jones Eagle's standing to sue. Either way, *Minnesota Specialty Crops* is clearly on point.

Regardless, the Attorney General's motion ignores the binding precedent that Jones Eagle cited in its opening brief. *See* Dkt. No. 75 at 14 (quoting *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2022) ("The work product privilege is not absolute and may be waived.")). In *Pamida*, the Eighth Circuit overruled work-product privilege assertions based on implied waiver. "With respect to the issue of implied waiver, the Court must not only look at whether Pamida intended to waive the privilege, but also whether the interests fairness and consistency mandate a finding of waiver." *Id.* (citing Wigmore, *Evidence in Trial at Common Law*, § 2327 at 636 (J. McNaughton rev. 1961) ("When a party seeks a greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, the privilege should give way."); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982)). As the D.C. Circuit

found, "[t]hrough the doctrine of implied waiver and exception, the law entrusts the courts with a duty to guard that the offices of lawyers, and the respect which we have for the bar, are not used for unfair or corrupt purposes." 676 F.2d at 825.

In *Pamida*, affirming the district court's finding of implied waiver, the Eighth Circuit reasoned, "[t]he information sought from Pamida's counsel involves the crucial issues in the indemnification action." 281 F.3d. at 732. "Fairness requires that the work product privilege must give way to Dynasty's right to investigate the facts underlying Pamida's claim and to mount a defense against that claim. Absent implied waiver, Dynasty would be denied access to critical information, known only to the LHDL attorneys." *Id.* Pamida opened the door to the discovery when "it clearly placed the work of its attorneys squarely at issue and thereby waived the work product privilege." *Id.* Even if *Minnesota Specialty Crops* could be confined to the expert witness context, there is no such limitation on *Pamida*, which is binding precedent.

Privileges "cannot be used as both a shield and sword[.]" *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998). "[C]ourts have recognized that fairness counsels in favor of a subject-matter waiver where a party selectively discloses otherwise privileged communications in a manner that prejudices the opposing party in a litigation." *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (citation omitted). "To effectuate a waiver, the selective disclosure must have occurred in an adversarial context, i.e., one that has the potential to cause legal prejudice to the proponent's adversary." *Id.* (citation omitted). "Courts have held that 'the privilege may implicitly be waived' or forfeited, on a subject-matter basis, when a defendant asserts a claim that in fairness requires examination of protected communications." *Id.* (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). "A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Bilzerian*, 926 F.2d

8

at 1292. Waiver of the work-product privilege "may result […] when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.'" *Favors*, 285 F.R.D. at 199 (citations omitted); *see United States v. Nobles*, 422 U.S. 225, 239-240 (1975) ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.").

The Attorney General claims that "[t]o argue standing as a defense is not to place an attorney's mental impressions at issue in this case." Dkt. No. 93 at 3. But in resisting disclosure, the Attorney General has contended that "these communications do not relate any underlying investigation under Act 636 or Act 174;" while maintaining they discuss "the logistics of filing the petition for contempt in state court after Jones Digital failed to respond to the subpoena." Dkt. No. 81 at 8. The "logistics" of petition filing would seem to implicate facts, not opinions. Either way, the Attorney General has made factual contentions about the subject-matter of his own communications. Those factual contentions must be testable via discovery if the Attorney General maintains his resistance to Jones Eagle's standing to sue.

Jones Eagle challenged this very dilemma in its original briefing. *See* Dkt. No. 84 ("The communications plainly relate to the Act 636 investigation. Defendants cannot assert standing challenges while withholding documents that may undermine their position."); *see* Dkt. No. 75 at 14 ("Defendants refuse to disclose materials which may be crucial to the Court's consideration of Jones Eagle's constitutional claims. Jones Eagle cannot obtain them by other means."). Despite

9

the Court's order, Jones Eagle remains blocked from reviewing these materials, limiting its ability to fully respond to the Attorney General's motion. However, to the extent the materials do trigger implied waiver, Jones Eagle expressly reiterates its request for their compelled production on that basis, for the same reasons it has argued since its original briefing.[2]

The Attorney General claims the dates and facts of opinion work product "was a clear error of fact." Dkt. No. 93 at 6-8. The Attorney General claims, "[a]n individual analysis would have demonstrated why such an order was a clear error of fact" and that the "entire basis (which we dispute as an error of law) for finding implied waiver (an argument not raised by Plaintiff) was that Defendant had placed Plaintiff's standing in dispute." *Id.* at 6. In support, the Attorney General claims, "[s]tanding is determined at the lawsuit's commencement." *Id.* (citing *Harley v. Zoesch*, 413 F.3d 866, 872 (8th Cir. 2005)). The Attorney General's analysis is incomplete.

While standing certainly must exist at the lawsuit's commencement, it must also "persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *see also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 (8th Cir. 2022) ("Standing must exist 'throughout the case because to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019)). Thus, the Attorney

---

[2] The Attorney General argues the Court "was required to 'rely on the parties to frame the issues for decision' and then act as a 'neutral arbiter of matters the parties present.'" Dkt. No. 93 at 5 (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *Clark v. Sweeney*, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025)). The Attorney General claims the issue was raised "*sua sponte*." That is wrong. Jones Eagle first requested production of these materials in July 2025. Throughout, Jones Eagle has maintained its position the Attorney General's assertion of standing defenses required production of materials which might undercut them—even those which might otherwise be entitled to work-product protections. Here, the Attorney General interposes standing defenses while blocking Jones Eagle's access to information which might rebut them. That informational asymmetry is precisely why the work-product privilege must give way, so that Jones Eagle can properly "frame the issues for decision." *Sineneng-Smith*, 590 U.S. at 375.

10

General is incorrect to argue that "emails that were withheld under attorney work product after the commencement of this litigation could not go toward any standing analysis." Dkt. No. 93 at 6. To the contrary, the Attorney General's waiver may extend far after November 13, 2024.

Finally, the Attorney General argues "portions of the order need clarification." Dkt. No. 93 at 8. This is moot. Jones Eagle stipulates the compliance deadline was February 4, 2026, at 5:00 p.m. Regardless of the source of any privilege, the Court compelled production of an enumerated list of documents. The Attorney General has made no attempt to comply with the Court's order.

## CONCLUSION

Jones Eagle moved to compel this discovery production on November 5, 2025. As the Court has found, the Attorney General did not timely respond in opposition. Dkt. No. 80 at 1. That would have been "adequate basis, without more, for granting the relief sought in said motion." Local Rule 7.2(g). It still is.

Rather than grant the relief sought under Local Rule 7.2(g)—which it could have done— the Court convened a lengthy hearing, heard argument of counsel, undertook *in camera* review to conduct a privilege analysis, analyzed the parties' briefs and exhibits, and ultimately issued a thorough, 33-page opinion announcing the Court's rulings and its reasoning.

The Court imposed production and filing obligations on the Attorney General. Days later, the Attorney General failed to produce materials which were readily available and which he had already provided to the Court for *in camera* review.

The Attorney General's motion for clarification and reconsideration should be denied.

Pursuant to Fed. R. Civ. P. 16(a)(2), to establish continuing control over this litigation, and to preserve the trial setting, Jones Eagle requests that the Court convene a hearing for the Attorney General to show cause why he has failed to comply with the Court's order of January 30, 2026.

11

*Respectfully submitted,*

Frederick H. Davis
Alexander T. Jones
McKenzie L. Raub
KUTAK ROCK LLP
124 West Capitol Ave., Suite 2000
Little Rock, AR 72201-3740
Telephone: (501) 975-3000
Facsimile: (501) 975-3001
frederick.davis@kutakrock.com
alex.jones@kutakrock.com
mckenzie.raub@kutakrock.com

Peyton C. Watts
KUTAK ROCK LLP
1277 East Joyce Boulevard, Suite 300
Fayetteville, AR 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
peyton.watts@kutakrock.com

Robert S. Chang*
Shaleen Shanbhag*
Fred T. Korematsu Center for Law and Equality
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (949) 824-3034
rchang@law.uci.edu
sshanbhag@law.uci.edu

Paul L. Hoffman*
Director of the Civil Rights Litigation Clinic
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (310) 717-7373
hoffpaul@aol.com

*Attorneys for Plaintiff Jones Eagle, LLC*
*\* Admitted Pro Hac Vice*