IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JONES EAGLE, LLC**                                                                      **PLAINTIFF**

**VS.**                **NO. 4:24-cv-990-KGB**

**WES WARD, et al.**                                                      **DEFENDANT**

## BRIEF IN SUPPORT OF JONES EAGLE'S MOTION FOR DISCOVERY SANCTIONS

### I.    Introduction

On January 30, 2026, the Court granted Jones Eagle's motion to compel discovery production from the Attorney General. Dkt. No. 91. The Court ordered the Attorney General to make production of specific documents which the Attorney General had submitted to the Court for review *in camera*. *Id.* at 17. The Court required that production be made by 5:00 p.m. on February 4, 2026. *Id.* at 18.

The Attorney General has failed to comply with the Court's order. The Attorney General neither sought nor obtained a stay of the Court's order. Instead, the Attorney General filed a "motion for clarification and reconsideration." Dkt. No. 92. Jones Eagle responded to that motion, which is ripe for decision. Dkt. No. 94. Jones Eagle incorporates by reference its response in support of this motion. Fed. R. Civ. P. 10(c).

Still without the withheld materials, Jones Eagle again sought to confer with the Attorney General to seek his compliance with the Court's order. Yet the Attorney General still refuses to produce the materials as ordered by the Court.

Jones Eagle faces substantial prejudice. Rule 37(b)(2) sanctions have become necessary. The question before the Court is what sanction is sufficient under the circumstances.

## II.     Legal Background

"If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). In such cases, the Court may award the following relief:

> (i) directing matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.*

While "entry of default judgment should be a rare judicial act," it may be appropriate when a party's "failure to comply [with] discovery has been due to willfulness, bad faith, or any fault of the party." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958)).

Rule 37(b) gives "the trial court discretion to impose a variety of sanctions, including dismissal for failure to obey discovery orders." *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1155 (8th Cir. 1983). "Imposition of such sanctions should not be reversed unless there has been an abuse of discretion." *Id.* (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642 (1976) ("The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.") (other citations omitted); *see also United States v. Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents*

*($11,071,188.64) in United States Currency*, 825 F.3d 365 (8th Cir. 2016) (The Eighth Circuit "review[s] Rule 37 sanctions for abuse of discretion.").

For the most potent discovery sanctions, *e.g.*, striking pleadings, dismissal, rendering default judgment, or contempt, the Eighth Circuit requires a three-part finding: (1) an order compelling discovery; (2) a willful violation of the order; and (3) prejudice. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (quoting *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014) ("[I]n this circuit, before dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith.") (emphasis in original) (quotations omitted)).

"The doctrine of judicial estoppel 'protects the integrity of the judicial process.'" *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006). "A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court." *Id.* The U.S. Supreme Court has identified three factors for courts to consider when deciding whether to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party is not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

3

### III. Argument

**A.     Rule 37(b)(2) sanctions are appropriate because all three *Comstock* factors are met.**

In *Comstock*, the Eighth Circuit affirmed imposition of dismissal as a discovery sanction under Rule 37(b)(2) entered by U.S. District Judge Susan Webber Wright. 775 F.3d at 992. As the Eighth Circuit reasoned, "dismissal of Comstock's lawsuit was available as a discovery sanction because the August 2012 order compelled discovery, and the court found that Comstock intentionally failed to comply with the order, thereby causing prejudice to UPS." *Id.* There, "non-production hampered UPS's ability to conduct several depositions." *Id.* (citations omitted).

The Eighth Circuit rejected Comstock's arguments that the district court "should have considered lesser sanctions." *Id.* at 992. As the Eighth Circuit found, "[a] court dismissing under Rule 37 […] need not investigate lesser sanctions when a party's violation is deliberate." *Id.* (citing *Bergstrom*, 744 F.3d at 576). The Eighth Circuit noted that Rule 37 "expressly authorizes dismissal or default for noncompliance with a discovery order." *Id.* (contrasting the exercise of "inherent authority" under *Shepherd v. Amer. Broadcasting Companies, Inc.*, 62 F.3d 1469 (D.C. Cir. 1995) with Rule 37's express authorization of dismissal or default)).

Here, as in *Comstock*, the Court has authority to impose sanctions under Rule 37 because all three factors have been met: (1) there is an order compelling discovery; (2) the Attorney General has willfully violated that order; and (3) Jones Eagle suffers prejudice. *See* 775 F.3d at 992 (quoting *Bergstrom*, 744 F.3d at 576; *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).

*1)     The Court issued an order compelling discovery production.*

The Court entered an order compelling the Attorney General to produce specific documents to Jones Eagle by February 4, 2026. Dkt. No. 91. The Court ruled "Defendants have waived the attorney-client privilege as to these documents given the issues involving in this litigation,

including but not limited to the issue of standing." *Id.* at 17. The first prong of the *Comstock* test is met since there is an order compelling discovery production.

  2)  *The Attorney General willfully violated the order.*

The Court's order gave a date and time by which the Attorney General must have complied: 5:00 p.m. on February 4, 2026. *Id.* at 18. The Attorney General failed to comply with the Court's order within the time permitted. Thus, the Attorney General has violated the Court's discovery order. This leaves a final question under the second prong of the *Comstock* test: was the Attorney General's violation willful?

Yes, the Attorney General's violation was willful.

The Court ordered the Attorney General to produce specific documents to Jones Eagle by February 4, 2026. Dkt. No. 91 at 18. The Attorney General failed to produce those documents to Jones Eagle. The Attorney General's refusal to comply with the Court's order is "a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." *Coral Group, Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 436 (W.D. Mo. 2012) (quoting *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I-Blackbird Bend Area*, 933 F.2d 1426, 1468 (8th Cir. 1991)).

The Attorney General had already submitted these very documents to the Court for *in camera* review well before the production deadline. Unredacted versions of these documents were at the ready. As the Attorney General has conceded, there would have been *de minimis* additional work to transmit those unredacted documents to Jones Eagle.[1]

On Monday, February 2, 2026, at 5:31 p.m., the Attorney General stated his intent "to produce the documents by 5:00 p.m." on Tuesday, February 3, 2026. Ex. 1 at 9. Yet by 10:13 p.m.

---

[1] Ex. 1 at 3. ("It is not an issue of burden, but a concern that turning over the materials would result in waiver of our privilege and render our pending motion moot. Accordingly, we will not be making the production until we have an order from the court on our pending motion.").

that same night, the Attorney General backtracked, asserting he "may need to seek clarification from the court," contending the parties' agreed protective order "is very one-sided" and "does not directly fit this situation." *Id.* at 6. The Attorney General referred to an "alleged waiver," despite the Court's clear ruling in its order. *Compare id. with* Dkt. No. 91 at 17.

Next, the Attorney General requested that Jones Eagle agree sight unseen to confidentiality designations for the documents. Jones Eagle responded, "we can't agree that any protective designation applies to materials we haven't reviewed." Ex. 1 at 5. Then the Attorney General expressly refused to produce the documents, stating he "will not be producing the documents today." Ex. 1 at 4.

Rather than produce the documents as ordered, the Attorney General filed a motion for clarification and reconsideration. Dkt. No. 92. That motion sought neither a stay, nor a protective order, nor to modify the existing agreed protective order, which the Court had entered based on the parties' joint submission. Dkt. Nos. 28, 31.

Over the next 24 hours, the deadline set by the Court's order came and went. The Attorney General refused to comply. Repeatedly, the Attorney General expressed his intent to refuse to comply with the Court's order. *E.g.*, Ex. 1 at 3 ("Accordingly, we will not be making the production until we have an order from the court on our pending motion."); *id.* at 4 ("We will be filing shortly and will not be producing the documents today."). Therefore, the second *Comstock* factor is met because the Attorney General has willfully violated the Court's order.

*3)   Jones Eagle suffers prejudice from the Attorney General's failure to comply.*

Jones Eagle cannot obtain this evidence by any other means. Jones Eagle has specifically conferred with the Attorney General about the specific harm caused by the Attorney General's willful refusal to comply with the Court's order. *See* Ex. 1 at 1-2. Jones Eagle has previously

identified specific prejudice it suffers from the Attorney General's noncompliance, which Jones Eagle incorporates by reference herein. *See* Dkt. No. 94 at 4-5; Fed. R. Civ. P. 10(c).

The Attorney General's refusal to comply with the Court's order impairs Jones Eagle's ability to develop evidence to support its claims and rebut the Attorney General's defenses. *Coral Group*, 286 F.R.D. at 436-437. Jones Eagle is forced to seek sanctions under Rule 37(b)(2)(A) without comprehending the scale of its prejudice.

The close of discovery is in just over two weeks' time. Jones Eagle has been stymied from taking party depositions by the Attorney General's refusal to produce the information. Jones Eagle had served notices of depositions of party affiliates Alexandra Benton and Walter Mahone, who authored or received the redacted communications. Jones Eagle has had to postpone both their depositions to permit the Attorney General to comply with the Court's order. *See Comstock*, 775 F.3d at 992 ("We note just one example of this prejudice, that Comstock's non-production hampered UPS's ability to conduct several depositions."). The Attorney General's willful violation of the Court's order has compounded Jones Eagle's existing prejudice by preventing comprehensive deposition examinations of Benton and Mahone.

Beyond this, Jones Eagle also faces severe prejudice in the appeal of this Court's preliminary injunction order (Dkt. No. 35) which is pending before the U.S. Court of Appeals for the Eighth Circuit. *See generally Jones Eagle, LLC v. Ward et al.*, 8th Cir. Case No. 25-1047. As this Court has found, Defendants' waiver of attorney-client privilege implicates issues on appeal. *See* Dkt. No. 91 at 17 (comparing Defendants' arguments on appeal and before the district court). This could trigger judicial estoppel. *E.g.*, *Stallings v. Hussman Corp.* ("A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court.") (citing *Total Petroleum Inc. v. Davis*, 822 F.2d

7

734, 738 n. 6 (8th Cir. 1987)). The Attorney General's refusal to produce the discovery means that Jones Eagle cannot inform the Court of Appeals of these judicial estoppel concerns.

**B.      How to measure the appropriate scope of relief.**

*1)      The Court must shape relief based on its knowledge of the withheld materials.*

The Attorney General's willful violation of the Court's order is straightforward. More complicated, though, is how to tailor appropriate relief. Typically, while "a district court need not impose the least onerous sanction, fairness requires it to consider whether a lesser sanction is available or appropriate before dismissing a case with prejudice." *Gleghorn v. Melton*, 195 F. App'x 535, 2 (8th Cir. 2006) (citing *Keefer v. Provident Life and Accident Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000). Here, under *Comstock* and *Bergstrom*, the Court may have wider latitude to impose more potent sanctions (and no accompanying duty to consider the availability of lesser sanctions) if the Court finds the Attorney General's failure to comply with its order "was deliberate or in bad faith." *Bergstrom*, 744 F.3d at 576.

As stated above, Jones Eagle does not know the full scale of its prejudice as it has not seen the withheld discovery. This hampers Jones Eagle's ability to analyze whether issues-related sanctions under Rule 37(b)(2)(A)(i)-(iii) would suffice. Without reviewing the withheld materials, Jones Eagle cannot assess fully whether the Attorney General's refusal to comply with the Court's order has been "in bad faith," as contemplated by *Bergstrom*.

But while Jones Eagle has not reviewed the withheld materials, the Court has. The Court can evaluate those documents in measuring the appropriate scope of relief. Depending on the substance of the withheld materials, Jones Eagle submits that sanctions up to and including entry of default judgment may be appropriate. Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii), (vi). Conversely, for

the following reasons, contempt under Fed. R. Civ. P. 37(b)(2)(A)(vii) may be perhaps too strong a remedy at this juncture.

   *2)*   *Default judgment may be warranted even as contempt may be premature.*

It has been difficult to find modern caselaw in which a state constitutional officer has willfully failed to comply with a lawful order issued by a federal court.[2]

Jones Eagle has identified one case arising from a writ of mandamus sought by the Attorney General of the United States. *See generally In re Attorney General of U.S.*, 596 F.2d 58 (2d Cir. 1979). In that case, the Second Circuit granted mandamus to *reduce* (but not eliminate) the level of sanctions from the most-potent remedy of contempt to lesser "issue-related" sanctions.

There, the Attorney General of the United States had refused the district court's order "to release eighteen files disclosing the names of a number of allegedly confidential governmental informants to appellees' attorneys, in accordance with an order of the court." *Id.* at 60. Based on the Attorney General's willful noncompliance, he was held in contempt by the U.S. District Court for the Southern District of New York. In response, The Attorney General of the United States sought mandamus from the Second Circuit to challenge the contempt order. *See id.*

The Government had "suggested three options to contempt" to the district court, having proposed issue-related sanctions such as (1) presumptions in favor of the non-disobedient parties; (2) "full discovery" with "a kind of test case of injury and damages" in order "to determine the amount of actual damages;" or (3) "the court and counsel should devise some other issue-related sanction." *Id.* at 66. However, rather than adopt issue-related sanctions, the district court gave an initial warning "that noncompliance would result in a civil contempt citation[;]" then, the district

---

[2] One example, though in a very different historical context, is the injunction issued in *Aaron v. Cooper*, 156 F.Supp. 220 (E.D. Ark. 1957).

9

court "adjudged [the Attorney General] in contempt on July 6, after he declared that he would refuse production" of the materials ordered by the Court. *Id.*, at 61.

Ultimately, the Second Circuit did grant mandamus to *reduce* the level of discovery sanctions ordered under Rule 37(b)(2); as the Second Circuit made clear, "holding the Attorney General of the United States in contempt to ensure compliance with a court order should be a last resort, to be undertaken only after all other means to achieve the ends legitimately sought by the court have been exhausted." *Id.* at 65. According to the Second Circuit, the district court erred because "[t]he Federal Rules of Civil Procedure permit many sanctions other than contempt alternatives that the court did not sufficiently explore to reject the Government's proposals." *Id.* The Second Circuit ruled "it was clearly erroneous for the district court to determine that the files are so central to the plaintiffs' case that contempt is the only appropriate sanction for the Government's failure to disclose them." *Id.* at 67.

However, the Second Circuit pointedly confined its order as deciding only whether "contempt is an appropriate sanction for noncompliance with the order." *Id.* at 68. The Second Circuit did not ratify the Attorney General's non-compliance with the district court's discovery order. Rather, the Second Circuit remanded with instructions to the district court to "impose those sanctions which, so far as possible, put plaintiffs in the position that they would have been if the Government had disclosed the information." *Id.* at 67. In fact, the Second Circuit included as an appendix to its ruling a "suggested form of representative findings" for the district court to enter as fact-finding against the Government in the underlying action. *Id.* at 68-70.

While *In re Attorney General of U.S.* does offer guidance, there are important distinctions limiting its full application here.

Jones Eagle requests prospective injunctive relief under the framework of *Ex parte Young* to restrain *state* officials from committing foreseeable deprivations of Jones Eagle's federal and constitutional rights under color of *state* law. 209 U.S. 123 (1908). The matter before the Second Circuit also involved claims for relief against federal officers. *In re Attorney General of U.S.*, 596 F.2d at 63 ("This too is an extraordinary case. It is, so far as we know, the first case brought by a political party against the Government itself for damages as well as injunctive relief for allegedly illegal surveillance of that party."). While federal courts should exercise caution when managing the boundary of federal-state relations, ultimately, Jones Eagle's preemption claim arises from the Supremacy Clause. The relationship between the federal courts and federal executive, which was at issue in the Second Circuit case, implicates horizontal federalism concerns as opposed to vertical federalism concerns.

Still, pairing *In re Attorney General* with more recent binding precedent of the Eighth Circuit, does suggest the proper course is for the Court first to consider whether the Attorney General's failure to comply with the Court's order was deliberate or in bad faith. *See Comiskey*, 989 F.2d at 1009 ("Tops Bar's total failure to comply with numerous court orders and with Comiskey's discovery requests was due to bad faith that justifies the district court's entry of default judgment.").

Here again, Jones Eagle does not know the full scope of its own prejudice since the Attorney General refuses to produce the documents in question. If the Court determines that issue-related[3] sanctions under Rule 37(b)(2)(A)(i) would offer complete remedy for Jones Eagle's prejudice, then the Court should impose those (in addition to fee-shifting under Rule 37(b)(2)(C)).

---

[3] Issue related sanctions could be imposed pursuant to subsections (i), (ii), or (iii). Fed. R. Civ. P. 37(b)(2)(A).

11

However, if the scale of prejudice is too substantial for issue-related sanctions to suffice, then the Court should enter an order striking the Attorney General's pleading in part or entering default judgment against the Attorney General under Rule 37(b)(2)(A)(iii) or (vi).

### C.     The Attorney General's response time should be shortened.

Under Local Rule 7.2(b), "[f]or cause shown, the Court may by order shorten or lengthen the time for the filing of responses and replies."

Here, there is cause to shorten the Attorney General's response deadline. The discovery window is nearly shut. Jones Eagle had to postpone depositions of Alexandra Benton and Walter Mahone to await the Attorney General's document production. After those depositions were postponed, the Attorney General first said he would produce the materials by February 3, 2025. But hours later, the Attorney General changed his position. The documents have not been produced, and the depositions remain off calendar.

To salvage the trial setting, Jones Eagle requests expedited consideration of this motion and an abbreviated response deadline for the Attorney General. Jones Eagle requests that the Court shorten the Attorney General's response deadline to February 12, 2026, to mirror the Attorney General's other filing obligations in this action.

### D.     Jones Eagle requests a hearing on pending motions at the next-available setting.

Under the circumstances, Jones Eagle does not know the scope of its own prejudice. The Court will likely need to undertake its own fact-finding at a hearing to ensure that the proper sanction is available to afford Jones Eagle complete relief. Pursuant to Fed. R. Civ. P. 16(a)(2), to establish continuing control over this litigation, to discourage wasteful pretrial activities, and to preserve the discovery schedule and trial setting, Jones Eagle requests that the Court set a hearing at the next available docket setting.

## CONCLUSION

The Court has spoken. But the Attorney General willfully refuses to comply with the Court's order. Jones Eagle suffers prejudice from that willful non-compliance. Therefore, the Court should enter sanctions under Rule 37(b)(2)(A) sufficient for complete relief to Jones Eagle.

*Respectfully submitted,*

Frederick H. Davis
Alexander T. Jones
McKenzie L. Raub
KUTAK ROCK LLP
124 West Capitol Ave., Suite 2000
Little Rock, AR 72201-3740
Telephone: (501) 975-3000
Facsimile: (501) 975-3001
frederick.davis@kutakrock.com
alex.jones@kutakrock.com
mckenzie.raub@kutakrock.com

Peyton C. Watts
KUTAK ROCK LLP
1277 East Joyce Boulevard, Suite 300
Fayetteville, AR 72703
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
peyton.watts@kutakrock.com

Robert S. Chang*
Shaleen Shanbhag*
Fred T. Korematsu Center for Law and Equality
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (949) 824-3034
rchang@law.uci.edu
sshanbhag@law.uci.edu

Paul L. Hoffman*
Director of the Civil Rights Litigation Clinic
UC Irvine School of Law
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: (310) 717-7373
hoffpaul@aol.com

*Attorneys for Plaintiff Jones Eagle, LLC*
*\* Admitted Pro Hac Vice*